[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-11719
Non-Argument Calendar
_____

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**January 6, 2006**
**THOMAS K. KAHN**
**CLERK**

D. C. Docket No. 04-00176-CR-CB

UNITED STATES OF AMERICA,

                                                                        Plaintiff-Appellee,

versus

DANIEL ASHTON SMITH,

                                                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

**(January 6, 2006)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

    Daniel Ashton Smith appeals his conviction, entered after a bench trial, for

possession of a firearm after having been convicted of a felony, in violation of 18

U.S.C. § 922(g)(1). On appeal, Smith argues the officer who stopped the vehicle

did not have Terry[1] reasonable suspicion to stop the vehicle because the paper license tag on the vehicle complied with Alabama's registration and license tag laws for new vehicles and because, absent a violation of those laws, the other circumstances surrounding the stop did not rise to the requisite level of suspicion to support the stop.[2]  A district court's findings of fact on a motion to suppress are reviewed for clear error, and its application of law to the facts is reviewed de novo. United States v. Hall, 47 F.3d 1091, 1094 (11th Cir. 1995). In the course of our review, we construe the facts in the light most favorable to the prevailing party. Id. After careful review of the record and the parties' briefs, we affirm.

The parties are familiar with the underlying facts and we only summarize them here.  Prior to trial, Smith filed a motion to suppress firearms that were seized during the traffic stop of a vehicle in which he was a passenger, arguing that the officer who made the stop, Corporal Shaun Dickens of the Mobile Police

---

[1] See Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[2]Under Alabama law:

Every motor vehicle operator . . . shall at all times keep attached and plainly visible on the rear end of such motor vehicle a license tag or license plate as prescribed and furnished by the Department of Revenue . . .

Ala. Code § 32-6-51.  Alabama law provides a new owner of a motor vehicle 20 days to purchase a license plate or transfer her existing license plate to the newly-acquired vehicle.  Ala. Code § 40-12-260(a)(4)a.

Department, did not have reasonable suspicion of a traffic violation, sufficient to initiate the stop. The district court conducted an evidentiary hearing on the motion.

According to Corporal Dickens's testimony at the hearing, the vehicle in which Smith was traveling was initially stopped because it did not have a metallic license tag issued by the state and Dickens had observed the vehicle parked outside an apartment complex office, which was closed at the time. Corporal Dickens, who provided security for the complex, had never seen the vehicle in the complex, nor did he recognize it as belonging to a resident. After Dickens observed that the vehicle had a "paper car lot tag," he decided to stop the car to confirm the validity of the paper tag.[3]

After stopping the vehicle, Corporal Dickens asked Cassie McConnell, the driver of the vehicle, why she did not have a tag, and she explained that she had just purchased the vehicle and provided him with the documentation. Officer Dickens noted that in addition to McConnell, there were four other passengers, including an infant, in the car. When he asked the occupants their names, Smith, who was seated in the backseat, gave a false name, which Dickens suspected based

---

[3]Alabama law provides a new owner of a motor vehicle a 20-day grace period in which to purchase a license plate or transfer her existing license plate to the newly-acquired vehicle. Ala. Code § 40-12-260(a)(4)a. As Dickens explained, the "only way" to verify whether someone is within the grace period is to ask him to produce the paperwork on the vehicle, which he routinely does.

upon Smith's "gestures and body english," and his inability to provide a social security number. When Dickens ran through the computer the name and date of birth that Smith gave him, the information was not on file, and, based upon his experience, this was an indication that the person was lying. Corporal Dickens's suspicions were subsequently reconfirmed when he discovered Smith's identification card in the vehicle, "shoved underneath the infant in the car seat."

The district court inquired as to why Dickens had not let the car leave after McConnell provided him with her paperwork, to which he responded:

> I wasn't sure what if anything had happened at my apartment complex. I needed to document who was there, at least for my records, make a documentation in case later on something had happened. They admitted that they were there at the apartment complex hanging around the pool area. [The complex] had [been having] a lot of problems with vandalism at the pool area. Auto burglaries at the pool . . . throughout the complex. I pretty quickly cleared up the issue on the tag. And then my investigation shifted more into identifying the occupants of the vehicle, for my records, to know who was trespassing at my apartments.

According to Corporal Dickens, McConnell stated that they were looking for somewhere to go swimming. Dickens explained that this was "part of [the] discrepancy," as none of the occupants had bathing suits, the complex only had an outdoor pool, and it was February. Officer Dickens testified that he inquired as to where their bathing suits were, and why they had a small child with them, noting that, after Smith's identity did not check out, "a lot of red flags [were] coming up."

4

Corporal Dickens stated that he decided to conduct a search of the vehicle, to which McConnell consented, because he was unable to make a positive ID on all of the occupants. He discovered two loaded handguns underneath the passenger seat and Smith's identification card in the baby seat. After completing the search, Dickens took a statement from Smith, who denied knowing anything about the firearms. At the time of Smith's arrest, Smith was wanted on a burglary warrant, which Corporal Dickens discovered after running Smith's name following his recovery of the identification card. Officer Dickens estimated that he completed the traffic stop in about two hours.

In support of suppression of the firearm evidence, Smith argued that a vehicle displaying a paper dealership tag cannot be stopped simply in order for an officer to inquire as to whether the vehicle is still within the grace period. The district court rejected Smith's position, noting that under Smith's logic, "[s]omeone who [bought] a car and d[id]n't want to buy a license tag, and [was] willing to run the risk, [could] drive around forever with the paper tag on their car." In a written order, the district court denied Smith's motion, finding that, under Alabama law, a motor vehicle operator is required to, at all times, keep a license tag or plate, as prescribed and furnished by the Department of Revenue, attached to the rear end of his vehicle, and the paper tag on McConnell's car was "not a license tag, temporary or otherwise." The court noted that Alabama law

permits "designated agents" to issue the latter, which must bear certain "required markings," including the date of issuance and expiration, and the make and vehicle identification number. See Ala. Code §§ 32-6-211, 32-6-216. The court found that, because none of this information was displayed on the tag on McConnell's vehicle, "McConnell's vehicle did not have a license tag prescribed or furnished by the state of Alabama," and, consequently, Officer Dickens had probable cause to stop the vehicle for failure to display a license tag.

The district court also found that even after Corporal Dickens determined McConnell was in compliance with Alabama law, Dickens had reasonable suspicion to detain the vehicle further because Dickens, who was assigned to burglary detail, (1) noticed McConnell's vehicle, at approximately 10:00 p.m., parked next to the complex office, which was closed; (2) as a result of his working security at the complex, knew that there had been problems with vandalism and car burglary; and (3) did not recognize the vehicle as belonging to a resident. Thus, the court concluded a "brief continuation of the detention" was justified in order to inquire of the vehicle's occupants as to what they were doing at the complex. Moreover, the court found, McConnell's statement that she and the occupants of vehicle were looking for a place to swim on a February night when they had a baby

6

with them, "only increased [his] suspicions about the group's involvement [in] criminal activity and provided grounds for continued detention."[4]

Following a bench trial, Smith was found guilty as charged and sentenced to an 11-month term of imprisonment. This appeal followed.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a constitutional detention if it is justified by reasonable suspicion or probable cause to believe that a traffic violation has occurred. United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir 2003). Under Terry, "the police may stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity, even though probable cause is lacking." United States v. Williams, 876 F.2d 1521, 1523 (11th Cir. 1989). The police officer must be able to point to "specific and articulable facts" which provide a basis for the intrusion. United States v. Pruitt,

---

[4] The district court subsequently granted Smith's motion to reconsider the denial of the motion to suppress, in order to clarify the court's interpretation of Alabama law. The court explained that, contrary to Smith's interpretation, § 32-6-216 applied to temporary license tags issued to motor vehicles, pursuant to Ala. Code § 32-6-211. The court noted that § 32-6-211 gives designated agents the authority to issue temporary license tags for motor vehicles that are to be permanently licensed in another state, while § 32-6-212 permits manufacturers or dealers to make application to issue temporary license tags for motor homes or trailers that are to be permanently licensed in another state. The court determined that "designated agent" was defined in Ala. Code. § 32-8-2 to encompass anyone designated to perform certain duties related to the issuance of motor vehicle license tags. Accordingly, the court concluded, the phrase "qualifying under Section 32-6-212" applied only to dealers and manufacturers "because designated agents do not 'qualify' under § 32-6-212," since the term is defined in § 32-8-2.

7

174 F.3d 1215, 1219 (11th Cir. 1999). "[R]easonable suspicion is determined from the totality of the circumstances and from the collective knowledge of the officers involved in the stop." Id. (internal quotations and citations omitted). An officer, who has briefly stopped a motor vehicle operator because of a traffic violation, only can continue the detention, pursuant to the Fourth Amendment, if he can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id. (internal quotations and citations omitted).

On this record, we can find no error of law in the district court's analysis, nor can we ascertain a clear error in the district court's determination of the facts, which we have construed in the light most favorable to the government, as the prevailing party below. Simply put, the initial stop of the vehicle was based upon a potential traffic violation, as well as a reasonable suspicion that the occupants of the vehicle were involved in criminal activity. Moreover, the continued detention of the vehicle, which was not of an unreasonable length, was based upon "specific and articulable facts" that reasonably warranted the intrusion. Accordingly, the district court did not err by denying Smith's motion to suppress and we affirm Smith's conviction.

**AFFIRMED.**