J-A31032-14

2015 PA Super 28

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| RAHIEM CARDEL FANT | |
| Appellee | No. 386 MDA 2014 |

Appeal from the Order Entered February 26, 2014
In the Court of Common Pleas of Clinton County
Criminal Division at No: CP-18-CR-0000415-2013

BEFORE:  BOWES, OTT, and STABILE, JJ.

OPINION BY STABILE, J.:                    **FILED FEBRUARY 09, 2015**

The Commonwealth appeals from the February 26, 2014 order entered in the Court of Common Pleas of Clinton County granting the suppression motion filed by Rahiem Cardel Fant (Appellee).[1]  Following review, we reverse.

In its opinion accompanying the order, the trial court explained:

[Appellee] is charged with four (4) counts of alleged criminal conduct, i.e., Aggravated Assault, a felony of the first degree, Aggravated Assault, a felony of the second degree, Simple Assault, a misdemeanor of the second degree, and Recklessly Endangering Another Person, a misdemeanor of the second degree.  All allegations of [Appellee's] criminal conduct arise out of an incident that occurred on North Grove Street in the City of

---

[1] Appellee's motion was titled "Motion in Limine to Exclude Evidence Relating to Telephone Recordings and Personal Belongings."  It was properly treated by the trial court as a suppression motion.

Lock Haven on May 11, 2013, wherein [Appellee] allegedly stabbed an adult male in the abdomen and the arm. [Appellee] is scheduled for jury trial to commence on Thursday, February 27, 2014. [Appellee] filed a Motion in Limine to Exclude Evidence Relating to Telephone Recordings and Personal Belongings on February 21, 2014. This [c]ourt conducted a hearing on February 25, 2014. At the hearing, the Commonwealth offered the testimony of Jackie Motter, Warden of the Clinton County Correctional Facility and Jenifer Bottorf, Victim/Witness Coordinator of Clinton County. The Commonwealth also offered four (4) exhibits which were entered into evidence.

[Appellee's] Motion seeks the exclusion of recordings made at the Clinton County Correctional Facility between [Appellee] and unknown persons and the subsequent receipt by law enforcement personnel of a bag of clothing and other personal belongings formerly owned by [Appellee] which were in the basement of Angela Monks, the previous paramour of [Appellee]. [Appellee] argues numerous reasons why these items should not be admitted into evidence.

Trial Court Opinion (T.C.O.), 2/26/14, at 1-2.

The trial court granted Appellee's suppression motion and prohibited the introduction of, and references to, recordings made during Appellee's visitation sessions at the Clinton County Correctional Facility (the facility) as well as the introduction of, and references to, personal belongings discovered as a result of the recordings. Trial Court Order, 2/26/14, at 1. The Commonwealth filed this timely appeal from the February 26, 2014 order. On March 16, 2014, in accordance with the trial court's directive, the Commonwealth filed its Rule 1925(b) statement of errors complained of on appeal asserting five errors, which are condensed into the three issues presented to this Court as follows:

- 2 -

I.      Did the court err in finding that the recordings made of Appellee's correctional facility visitation calls were not telephone calls which fell within the exception to the Wiretap Act?

II.     Did the court err in suppressing evidence without finding that Appellee had a reasonable expectation of privacy in the correctional facility visitation calls?

III.    Did the court err in suppressing the personal belongings of Appellee seized as the seizure was based upon lawfully obtained information?

Commonwealth Brief at 5.[2]

We begin by setting forth our scope and standard of review. As this

Court has recognized:

When reviewing a grant of a suppression motion, the appropriate scope and standard of review are as follows:

[W]here a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.

Moreover, if the evidence supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings.

_____

[2] We remind the Commonwealth of the requirement to include a copy of the statement of errors complained of on appeal in briefs filed with this Court. Pa.R.A.P. 2111(a)(11).

***Commonwealth v. Burgos***, 64 A.3d 641, 647 (Pa. Super. 2013) (quoting

***Commonwealth v. Powell***, 994 A.2d 1096, 1101 (Pa. Super. 2010)

(citations omitted)).

As noted, this Court is bound by the findings of the suppression court that are supported by the record. Because this is an appeal by the Commonwealth, we must consider only the evidence of Appellee's witnesses and the evidence of the Commonwealth that remains uncontradicted in the context of the record. ***Id.***

Here, Appellee did not present any witnesses at the suppression hearing. The only two witnesses who testified were the facility's warden and the Clinton County victim/witness coordinator, both of whom were called by the prosecution. Four exhibits were admitted in the course of their testimony. The exhibits included Policy Number 100:15, "Telephone Regulations for Inmates," from the Clinton County Correctional Facility Policy and Procedure Manual; the Clinton County Correctional Facility Inmate Handbook; The Inmate I.D. Card Agreement and Acknowledgement of Inmate Rules and Regulations, both of which were signed by Appellee; and the Clinton County Correctional Facility Inmate Telephone ID Number Release Form signed by Appellee. Absent any witnesses for Appellee, this Court must determine whether the suppression court's factual findings are supported by the evidence of the Commonwealth that remains uncontradicted in the context of the record.

At issue are recordings of conversations that took place between Appellee and visitors in the facility's visitation room and whether the recorded calls were "telephone calls" under § 5704(14) the Pennsylvania Wiretap Act, 18 Pa.C.S.A. § 5704(14). Regarding the suppression court's factual findings, no Findings of Fact or Conclusions of Law were announced at the conclusion of the suppression hearing. Instead, the court "ordered that [the court] will take this matter under advisement, attempt to do some legal research, and reach a decision tomorrow morning." N.T., 2/25/14, at 38. In its opinion and order issued the following day, the court stated:

> [Appellee's] first argument in support of excluding the recordings is that it violates § 5704 of the Pennsylvania Wiretap Statute. 18 PaC.S.A. § 5704. The Commonwealth has argued that § 5704(14) permits these recordings. A close examination indicates that "telephone calls" may be intercepted and recorded by the correctional facility and then forwarded to law enforcement for the prosecution or investigation of any crime. Initially, although this [c]ourt attempted to seek clarifications throughout the proceedings because of the intricacies of the Wiretap Statute, this [c]ourt must note that all the recordings but two (2) are not what this [c]ourt would refer to as "telephone calls." The District Attorney admitted at the hearing on February 25, 2014 that no case law exists regarding this case.
>
> The system in place at the Clinton County Correctional Facility for visitation is that Defendant picks up an apparatus that resembles a telephone and punches in an i.d. number and the other individual across the glass from Defendant picks up that apparatus and a discussion ensues. These are the discussions except for two (2) short phone calls that were intercepted. This [c]ourt does not believe that this was what the Legislature contemplated when it indicated that it was allowing telephone calls from the correctional facility to be intercepted and recorded. Clearly, the conversation is between a visitor at a correctional facility and an inmate. These conversations do not

- 5 -

involve the use of a telephone company, telephone lines or equipment outside the correctional facility. The every day common sense use of the word telephone does not include this scenario. Therefore, this Court rules that the "visit" conversations are not telephone calls and are not subject to the Wiretap accession under § 5704(14). Therefore, the Commonwealth has offered no other argument for any exception and therefore, those calls must be suppressed.

T.C.O., 2/26/14, at 2-3.

As is evident from the excerpt quoted above, the trial court made few "factual findings." *Cf.* Pa.R.Crim.P. 581(I) ("At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact . . . ."). Essentially, the findings of fact were limited to (a) describing the facility's visitation system as one in which the inmate and his visitor carry on a discussion through a glass partition using an apparatus that resembles a telephone activated by the inmate punching in an I.D. number, and (b) announcing that all but two of the recorded conversations did not involve the use of a telephone company, telephone lines or equipment outside the correctional facility. A fair reading of the trial court's opinion does not reveal any additional findings of fact. To the extent those findings are supported by the record, we are bound by them.[3] However, our review of the suppression hearing transcript reveals additional uncontradicted facts not

---

[3] As noted below, the trial court's finding that the recordings in question did not involve a telephone company is not supported by the evidence. The evidence supports the remaining findings.

enunciated by the trial court that must be considered to determine whether error in the trial court's legal conclusions warrants reversal of its order.

From our review of the suppression hearing transcript, we glean the following. The uncontradicted testimony of the facility's warden established that the facility's Inmate Handbook contains information regarding the recording of telephone calls. N.T. Suppression Hearing (N.T.), 2/25/14, at 6; Commonwealth Exhibit 2. Section 3001 on page 7 of the handbook provides in bold typeface that "[t]elephone calls are subject to monitoring, recording, and may be intercepted or divulged." *Id.* at 6-7. Appellee signed an acknowledgement of receipt of his Inmate ID Card Agreement and an acknowledgement of the Inmate Rules and Regulations on his booking date, May 12, 2013. *Id.* at 7-8; Commonwealth Exhibit 3. Appellee also signed a release form on the same date that explains the inmate telephone system and the unique telephone ID number assigned to him. *Id.* at 8; Commonwealth Exhibit 4. The form includes an acknowledgement that telephone calls are subject to monitoring, recording and interception. *Id.*

An inmate uses his telephone ID number to initiate calls outside the facility as well as visitation calls within the facility for face-to-face visits using a telephone to communicate through glass. *Id.* at 13-17. Both external and internal calls are recorded on the same system and are stored on the prison's computer server. *Id.* at 9-10; 12-14. Calls are designated as calls to an outside number or a visitation call. *Id.* at 14. Visitation calls

go through and are recorded by the inmate phone company. *Id.* at 14; 16.[4] Those having access to the stored calls include the warden, the deputy warden, the lieutenants, and the office and records manager who has been designated to record phone calls during the warden's one year tenure as warden and during the 13 years she served as deputy warden. *Id.* at 10-12. According to the uncontradicted testimony of the victim/witness coordinator, the recordings in question here, with the possible exception of two outside calls, were from visitation calls within the facility during face-to-face visits using a telephone activated by Appellee entering his telephone ID number. *Id.* at 25. The request for the recordings stemmed from a February 3, 2014 call from a Commonwealth witness who expressed concern about "the players involved and the possibility of somebody reaching out to her to . . . talk to her about what she was going to say." *Id.* at 19.

In his motion to suppress, Appellee contended that "[b]y letter dated February 18, 2014, the office of the District Attorney provided [Appellee's] counsel with three (3) CDs containing **recordings of telephone conversations** taken during various visits at the Clinton County Correctional Facility between [Appellee] and various visitors." Motion in Limine to Exclude Evidence Relating to **Telephone Recordings** and Personal Belongings, 2/21/14 at ¶ 4 (emphasis added). Much of Appellee's

---

[4] See footnote 3.

motion focused on the Commonwealth's delay in producing voluminous amounts of discovery material relating to the recordings and the burden on the defense of reviewing the materials in the short time remaining before trial. *Id.* at ¶¶ 5-8 and ¶¶ 11-19. However, Appellee also challenged the anticipated use of the recordings at trial based on the alleged failure of officials at the facility to follow the process and regulations outlined in the Pennsylvania Wiretap Act with respect to the recordings. *Id.* at ¶ 10.

Section 5704(14) of the Wiretap Act provides, in pertinent part, that:

> It shall not be unlawful and no prior court approval shall be required under this chapter for: . . .
>
> (14) An investigative officer, a law enforcement officer or employees of a county correctional facility to intercept, record, monitor or divulge **any telephone calls** from or to an inmate in a facility under the following conditions:
>
> > (i) The county correctional facility shall adhere to the following procedures and restrictions when intercepting, recording, monitoring or divulging **any telephone calls** from or to an inmate in a county correctional facility as provided for by this paragraph:
> >
> > > (A) Before the implementation of this paragraph, all inmates of the facility shall be notified in writing that, as of the effective date of this paragraph, their telephone conversations may be intercepted, recorded, monitored or divulged.
> > >
> > > (B) Unless otherwise provided for in this paragraph, after intercepting or recording a telephone conversation, only the superintendent, warden or a designee of the superintendent or warden or other chief administrative official or his or her designee, or

law enforcement officers shall have access to that recording.

(C) The contents of an intercepted and recorded telephone conversation shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

18 Pa.C.S.A. § 5704(14) (emphasis added).

The Commonwealth and Appellee both acknowledge that the Wiretap Act does not define the word "telephone." Commonwealth Brief at 12; Appellee Brief at 7. The Commonwealth offers the *Webster's Dictionary* definition of a telephone as "[a]n instrument for reproducing sounds, especially articulate speech, at a distance," and an alternate definition of "an electrical device for transmitting speech, consisting of a microphone and receiver mounted on a handset," from *Collins English Dictionary – Complete & Unabridged 10th Edition 2009*. Appellee offers a *Merriam-Webster Online Dictionary* definition indicating that a telephone is "a device that is connected to a telephone system and that you use to listen or speak to someone who is somewhere else." (http://www.merriam-webster.com/dictionary/telephone?show=0&t=1409159323.) Another online source, *BusinessDictionary.com*, explains that a "telephone consists of two essential parts; a microphone and a speaker. This allows the user to speak into the device and also hear transmissions from the other user."

- 10 -

(http://www.businessdictionary.com/definition/telephone.html#ixzz3O4MV4 vqJ).

Appellee argues that the Commonwealth's selected definitions are self-serving and suggests that his definition should be accepted because it includes an important distinction, *i.e.*, that a telephone must be connected to a telephone system and used to listen or speak to someone who is somewhere else. Appellee Brief at 7. However, the uncontradicted evidence from the suppression hearing reveals that the telephones in the facility's visitation room are connected to the "inmate phone company." N.T., 2/25/14, at 16. Calls on both the inmate phone system and the facility's Verizon telephone system are recorded by the same computer system. ***Id.*** Further, the telephones in the visitation room are used to listen or speak to someone who is somewhere else, *i.e.*, on the other side of a glass partition that would otherwise prevent prisoners and their visitors from communicating audibly. Those facts bring the visitation calls within Appellee's proffered definition.

Under any of the "common meanings" of telephone, as listed above, we conclude the record does not support the trial court's legal conclusion that the "apparatus that resembles a telephone" is not a telephone and that the recorded telephone "visit" conversations are not subject to the exception set forth in § 5704(14) of the Wiretap Act. The Act does not distinguish between external and internal telephone calls from or to an inmate in a

county correctional facility. Because the motion to suppress was granted based on an unwarranted distinction between the two, we reverse the trial court's order suppressing the recorded conversations as well as the evidence obtained as a result of those conversations.[5]

Order reversed. Case remanded. Jurisdiction relinquished.[6]

---

[5] Because our resolution of the Commonwealth's first issue enables us to dispose of the matter before us, it is not necessary to address separately the Commonwealth's remaining issues.

[6] We note and agree with Appellee's contention that this Court lacked jurisdiction to entertain this appeal under Pa.R.A.P. 341 relating to final orders. Although the Commonwealth's brief suggests the appeal is taken pursuant to Rule 341, the Commonwealth certified in its notice of appeal that the trial court's order "will terminate or substantially handicap the prosecution," satisfying the requirement of Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). While the trial court suggests that it would be "extremely difficult" for this Court to determine whether the prosecution would be substantially handicapped by the suppression order, Trial Court 1925(a) Opinion, 4/1/14 at 3-4, our Supreme Court has recognized that the grant of a suppression motion is a proper basis for invoking Rule 311(d). *See, e.g., Commonwealth v. Cosnek*, 836 A.2d 871, 875 (Pa. 2003) ("When a pretrial motion removes evidence from the Commonwealth's case, only the prosecutor can judge whether that evidence substantially handicaps his ability to prove every essential element of his case.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2015