J-S16030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DARYIN JACKSON, | |
| Appellee | No. 1414 MDA 2014 |

Appeal from the Order Entered July 24, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003621-2013

BEFORE:  PANELLA, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 13, 2015**

The Commonwealth of Pennsylvania appeals from the order entered on July 24, 2014 granting Appellee Daryin Jackson's motion to suppress and motion for a writ of *habeas corpus*.  After careful consideration, we reverse and remand.

The Honorable Stephen B. Lieberman, a judge of the Court of Common Pleas of Berks County, made the following factual findings:

> On July 19, 2013, Sergeant Paul Reilly of the Reading Police Department was on bike patrol during the late evening hours in the City of Reading, Berks County, Pennsylvania.  While on patrol in the 700 block of Franklin Street, Sergeant Reilly, who was dressed in full uniform, observed a Mazda.  Sergeant Reilly knew from prior encounters that the driver of the vehicle[, Hector Rivera-Aleman ("Rivera-Aleman"),] had a suspended driver's license.  Sergeant Reilly observed [Rivera-Aleman] interacting with a man who was later identified as [Appellee].  The two men met briefly and then walked to the Mazda.  [Appellee] got into the passenger side of the vehicle.

[Rivera-Aleman] then drove the Mazda to the Good Deal Mini Mart, which is located at the intersection of Eighth Street and Walnut Street in the City of Reading.

Sergeant Reilly and other police officers pursued the Mazda, and Sergeant Reilly approached [Rivera-Aleman] when it stopped at the mini mart. Sergeant Reilly checked [Rivera-Aleman's] license [status], and confirmed that it was still suspended. While Sergeant Reilly was interacting with [Rivera-Aleman], Officer Brett Sneeringer approached [Appellee]. Officer Sneeringer observed that [Appellee] was sweating and that he appeared to be nervous. Officer Sneeringer asked [Appellee] for identification, which [Appellee] did not have on his person. [Appellee] stated that his name was James Jackson, which Officer Sneeringer attempted to verify through dispatch.

Officer Sneeringer informed [Appellee] that there was no record of his name in either the PennDOT or [National Crime Information] systems. Officer Sneeringer testified that [Appellee] was not free to leave at this point in time. [Appellee] then contacted his wife, who arrived at the scene and provided information to Officer Sneeringer which enabled him to learn that [Appellee]'s name was in fact Daryin Jackson, and that there was an active warrant for [Appellee] due to a parole violation. A subsequent search of [Appellee]'s person resulted in the seizure of cocaine, drug paraphernalia, and approximately [$600.00] of United States currency.

Findings of Fact and Conclusions of Law, 7/24/14, at 3-4 (paragraph numbers and certain paragraph breaks omitted).

The procedural history of this case is as follows. On August 30, 2013, Appellee was charged via criminal information with possession of a controlled substance[1] and possession with intent to deliver a controlled

---

[1] 35 P.S. § 780-113(a)(16).

substance.[2]  On September 30, 2013, Appellee filed an omnibus pre-trial motion, which included a motion to suppress and a motion for a writ of *habeas corpus*.  On January 10, 2014, a suppression hearing was presided over by the Honorable Charles B. Smith, a senior judge of the Court of Common Pleas of Chester County.  At the conclusion of that hearing, Judge Smith discussed various aspects of the case but did not rule on the motion to suppress.

Although no definitive ruling was issued on the pending motion to suppress, on April 17, 2014, Appellee filed a motion to reconsider.  On April 22, 2014, Judge Lieberman granted the motion to reconsider.  On July 24, 2014, Judge Lieberman granted the motion to suppress, granted the motion for a writ of *habeas corpus*, and dismissed the charges against Appellee.  Contemporaneously therewith, Judge Lieberman issued findings of facts and conclusions of law based upon the transcript of the suppression hearing held before Judge Smith.  The timely appeal followed.[3]

The Commonwealth presents three issues for our review.

1. Did [Judge Lieberman] violate the law of the case doctrine by overruling [Judge Smith]?

---

[2] 35 P.S. § 780-113(a)(30).

[3] On August 22, 2014, Judge Lieberman ordered the Commonwealth to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b).  On September 8, 2014, the Commonwealth filed its concise statement.  On September 29, 2014, Judge Lieberman issued his Rule 1925(a) opinion.  All issues raised on appeal were included in the Commonwealth's concise statement.

2. Did [Judge Lieberman] err in suppressing evidence obtained as a result of a lawful traffic stop where police properly sought to identify [ ]Appellee?

3. Did [Judge Lieberman] err in granting the request for a writ of *habeas corpus* without permitting the Commonwealth to appeal from the adverse suppression ruling?

Commonwealth's Brief at 4 (complete capitalization removed).

The Commonwealth first contends that Judge Lieberman violated the coordinate jurisdiction rule by overturning Judge Smith's decision. As this presents a pure question of law, our standard of review is *de novo* and our scope of review is plenary. ***Jones v. Rivera***, 866 A.2d 1148, 1150 (Pa. Super. 2005). This Court has explained:

> Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. More simply stated, judges of coordinate jurisdiction should not overrule each other's decisions.
>
> The reason for this respect for an equal tribunal's decision, as explained by our court, is that the coordinate jurisdiction rule is based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency. Furthermore, consistent with the law of the case doctrine, the coordinate jurisdiction rule serves to protect the expectations of the parties, to insure uniformity of decisions, to maintain consistency in proceedings, to effectuate the administration of justice, and to bring finality to the litigation.

***Keffer v. Bob Nolan's Auto Serv., Inc.***, 59 A.3d 621, 629–630 (Pa. Super. 2012), *appeal denied*, 69 A.3d 602 (Pa. 2013) (internal quotation marks and citations omitted).

- 4 -

In order for the coordinate jurisdiction rule to apply, the transferee trial judge must have resolved a legal question. In this case, careful review of the record indicates that Judge Smith never resolved Appellee's motion to suppress. The certified record is devoid of any order entered by Judge Smith granting or denying the motion to suppress. The notes of testimony indicate that, after the presentation of evidence and hearing counsel's arguments, Judge Smith discussed the legal issues raised by Appellee's motion to suppress. The entirety of Judge Smith's statement was:

> All right. Well, I'm impressed with what happens once the interaction begins, once there's a stop at the mini mart. That's where the case begins because two guys can't walk up to one another on the street and say, hi, and then go get in the car. That's probable cause for nothing. You can talk to everyone on the street at that time of night that talks to one another. And the area where this took place, that's just unfortunate that there is high crime in that area; but that doesn't mean that everybody in that area is a criminal.
>
> My problem is that a police officer who makes a stop, and a reasonable one, certainly because we know the guy shouldn't be driving, has a right to find out who else is in the car kind of for his own protection so he knows who's around. And if you want to give him bad information and he wants to check it out, give him the probable cause, then I think at that point there's probable cause to do what he has to do. But I'm not impressed with what happened in the 700 block of Franklin or whatever street we were on. But we're convinced that the probable cause – or once the gentlemen gave false information and it was shown to be false and then you find out who he really is and he's got a bench warrant out there or parole violation of some kind, then it's done. You can do what you will with him in terms of a stop and search. And so we find.

N.T., 1/10/14, at 40-41.

Judge Smith never stated on the record that he was granting or denying Appellee's motion to suppress. *See id.* The closest he came was the last four words of his statement, when he stated, "And so we find." *Id.* at 41. It is unclear, however, exactly what he is finding. Nowhere in the preceding two paragraphs does he state that the interaction between the officer and Appellee was lawful, nor does he state that the motion to suppress was denied, granted or some variation thereof. We recognize that Appellee and the Commonwealth proceeded as if Judge Smith denied the motion to suppress. This is evident by their actions following the hearing, *i.e.*, filing a petition for reconsideration and responding that the coordinate jurisdiction rule prohibited Judge Lieberman from overturning Judge Smith's decision. The parties' subjective beliefs, however, may not be considered when determining what action Judge Smith took. *Cf. All Seasons York S. v. Commw. of Pa., Dep't of Transp. (In re Condemnation by Commw., Dep't of Transp.)*, 2008 WL 9405091, *4 n.14 (Pa. Cmwlth. Dec. 4, 2008), *quoting* ***Commonwealth v. Brennan***, 195 A.2d 150, 151 (Pa. Super. 1963) ("When [interpreting another court's order], a 'court is bound by the words of the order itself, supplemented, if at all, only by statements or documents of record at the time the order was made.'"). By the plain terms of Judge Smith's words, and the lack of a written order, Judge Smith never ruled on the motion to suppress. Thus, the coordinate jurisdiction rule does not apply in this case.

We thus turn to the merits of Judge Lieberman's suppression ruling. Our "standard of review in addressing a challenge to the [grant] of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Garibay*, 106 A.3d 136, 138 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Fant*, 109 A.3d 775, 777 (Pa. Super. 2015) (citation omitted).

"Both the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. Perel*, 107 A.3d 185, 198 (Pa. Super. 2014) (citation omitted). "To safeguard these rights, courts require police to articulate the basis for their interaction with citizens in three increasingly intrusive situations." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013) (internal alterations, quotation marks, and citation omitted).

> The first of these is a mere encounter (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an investigative detention must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or custodial detention must be supported by probable cause.

*Commonwealth v. Ranson*, 103 A.3d 73, 76-77 (Pa. Super. 2014) (internal alteration, quotation marks, and citation omitted). The burden is on the Commonwealth to prove, by a preponderance of the evidence, that the evidence seized from Appellee was legally obtained. *Commonwealth v. Enimpah*, 106 A.3d 695, 701 (Pa. 2014).

"A police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code." *Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013), *appeal denied*, 79 A.3d 1096 (Pa. 2013), *citing* 75 Pa.C.S.A. § 6308(b). However, "a traffic stop . . . is not an appropriate vehicle within which to make inquiries about potential unlawful conduct unrelated to the stop [and] not supported by reasonable suspicion." *Commonwealth v. Strickler*, 757 A.2d 884, 897 n.20 (Pa. 2000) (citation omitted); *see also Rodriguez v. United States*, 2015 WL 1780927, *5 (U.S. Apr. 21, 2015) ("An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that

prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."). In this case, Sergeant Reilly had reasonable suspicion to stop the Mazda. In particular, Sergeant Reilly knew that the driver of the Mazda lacked a valid driver's license. It is well-settled that knowledge regarding the suspended status of a driver's operations privileges provides reasonable suspicion to perform a traffic stop. **Commonwealth v. Farnan**, 55 A.3d 113, 117 (Pa. Super. 2012), *citing* **Commonwealth v. Hilliar**, 943 A.2d 984 (Pa. Super. 2008).

We first consider if and/or when the interaction between Officer Sneeringer and Appellee escalated to the point where Officer Sneeringer was required to have reasonable suspicion separate and apart from the original traffic stop. Appellee's testimony differed from Officer Sneeringer's testimony regarding how the stop began. Specifically, Appellee testified that at the time Officer Sneeringer approached the Mazda, he was standing outside of the car. N.T., 1/10/14, at 28. Appellee testified that Officer Sneeringer directed him to return to the passenger seat of the Mazda. **Id.** As the Commonwealth is the appellant in this case, we may only consider Appellee's testimony as to this matter as it contradicts Officer Sneeringer's testimony. **See Commonwealth v. Dougalewicz**, 2015 WL 1431922, *4 (Pa. Super. Mar. 30, 2015); **Fant**, 109 A.3d at 777; **Garibay**, 106 A.3d at 138.

This Court has held that

a police officer may lawfully order a passenger who has exited and/or attempted to walk away from a lawfully stopped vehicle to re-enter and remain in the vehicle until the traffic stop is completed, without offending the passenger's rights under the Fourth Amendment. In reaching this conclusion, we rely on many of the factors specifically set forth by the [United States Court of Appeals for the Ninth Circuit in *United States v. Williams*, 419 F.3d 1029 (9th Cir. 2005), *cert denied*, 546 U.S. 1081 (2005)], including the fact that the passenger had voluntarily entered the vehicle, and that an officer's order to get back into a vehicle simply maintains the status quo by returning the passenger to his original position as an occupant inside the car.

As the same reasonable suspicion standard used in determining the propriety of an investigative detention under the [Fourth] Amendment applies to an analysis under Article 1, [§] 8 of the Pennsylvania Constitution . . . we likewise hold that a police officer's instructions to a passenger of a lawfully stopped vehicle to re-enter and remain in the vehicle do not violate an individual's rights under [] Article I, [§] 8 of the Pennsylvania Constitution.

*Commonwealth v. Pratt*, 930 A.2d 561, 567 (Pa. Super. 2007), *appeal denied*, 946 A.2d 686 (Pa. 2008). In this case, Appellee was ordered to return to the passenger seat of the Mazda during the course of the traffic stop. Under *Pratt*, Officer Sneeringer's order did not require reasonable suspicion beyond that necessary for the traffic stop.

After Appellee was ordered to return to the Mazda, Officer Sneeringer asked Appellee for identification and Appellee was unable to produce identification. As Judge Lieberman correctly noted, our "Supreme Court has held that a police officer's request for identification from a passenger of a vehicle during a traffic stop does not, in and of itself, transform an encounter into an unconstitutional investigatory detention." Findings of Fact

- 10 -

and Conclusions of Law, 7/24/14, at 5, *citing* **Commonwealth v. Au**, 42 A.3d 1002, 1007 (Pa. 2012).[4] In this case, therefore, we agree with Judge Lieberman that Officer Sneeringer's request for identification did not require reasonable suspicion beyond that necessary for the traffic stop.

After this request for identification, Appellee gave Officer Sneeringer an incorrect name and date of birth. According to Judge Lieberman, Officer Sneeringer then contacted dispatch, who told him that the information Appellee provided did not match information contained in two databases. Appellee therefore contacted his wife to bring his identification.[5] Appellee's wife provided Officer Sneeringer with Appellee's actual date of birth. Based upon this information, Officer Sneeringer was able to ascertain that there

---

[4] Appellee cites a plethora of pre-**Au** cases for the proposition that requesting identification transforms a mere encounter into an investigative detention. In **Au**, however, our Supreme Court disapproved of these decisions and explicitly held that requesting identification does not transform a mere encounter into an investigative detention.

[5] We note that Judge Lieberman's factual findings regarding this series of events differ slightly from the testimony on record. For example, the uncontradicted testimony at the suppression hearing was that Appellee contacted his wife prior to dispatch being consulted. **See** N.T., 1/10/14, at 19. Furthermore, there was no evidence that the woman Appellee contacted was his wife. The Commonwealth, however, has not challenged those factual findings on appeal. Except in circumstances not present in this case (*e.g.*, an illegal sentence or jurisdictional concerns), we cannot reverse based upon grounds not raised by the appellant. **See Riedel v. Human Relations Com'n of Reading**, 739 A.2d 121, 125 (Pa. 1999). Therefore, we cannot overturn these factual findings and proceed with our analysis based upon factual findings supported by the record. Instead, we must proceed based upon Judge Lieberman's factual findings.

was an active warrant for Appellee's arrest. At that time, Officer Sneeringer ordered Appellee out of the Mazda and informed him that he was being detained.

Officer Sneeringer was required to possess separate reasonable suspicion to detain Appellee once dispatch told him that the name provided by Appellee did not match any names in two databases.[6] According to Judge Lieberman, it was at this point Appellee had to contact his wife to bring his identification. At that point, the traffic stop was being extended beyond the time necessary to issue Rivera-Aleman a citation for driving with a suspended license.[7]

Therefore, we must determine if, at that point, Officer Sneeringer possessed reasonable suspicion.

_____

[6] Appellee misunderstands the difference between an investigative detention and an arrest. He argues that an arrest occurs anytime an individual is not free to leave. The law in this area is well-settled, when an individual is not free to leave that amounts to an investigative detention, not an arrest. **Commonwealth v. Cauley**, 10 A.3d 321, 325 (Pa. Super. 2010) (citations omitted) ("In other words, in view of all the circumstances, if a reasonable person would have believed that he was not free to leave, then the interaction constitutes an investigatory detention."). Thus, Appellee was subject to an investigative detention for which the police needed reasonable suspicion and not an arrest for which the police needed probable cause.

[7] Officer Sneeringer testified during the suppression hearing that it was at this point Appellee was being detained for a reason apart from the original traffic stop. Officer Sneeringer's testimony is not dispositive, as the inquiry into whether an interaction is a mere encounter or investigative detention is objective and not subjective. **Commonwealth v. Lyles**, 97 A.3d 298, 302 (Pa. 2014). Nonetheless, Officer Sneeringer's testimony indicates how he perceived his interaction with Appellee.

As this Court explained:

Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. . . . In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

The determination of whether an officer had reasonable suspicion . . . is an objective one, which must be considered in light of the totality of the circumstances.

**Clemens**, 66 A.3d at 379 (ellipsis and citation omitted).

We agree with the Commonwealth that Officer Sneeringer possessed reasonable suspicion that criminal activity was afoot at the time he extended the detention of Appellee beyond the initial traffic stop. Specifically, we conclude that the following factors, when considered together, provided Officer Sneeringer with reasonable suspicion: (1) Appellee produced a false name and date of birth; (2) Appellee was excessively nervous during the traffic stop;[8] (3) the interaction occurred late at night in a high crime area; and (4) police observed Appellee engage in what appeared to be a suspicious interaction.

We first address the fact Appellee provided Officer Sneeringer with a false name and false date of birth. This Court has held that:

_____

[8] Although Appellee testified he was not sweating profusely during the encounter, N.T., 1/10/14, at 32, Judge Lieberman explicitly found to the contrary. Findings of Fact and Conclusions of Law, 7/24/14, at 4.

- 13 -

> While we do not condone the providing of false identification information to police officers, applying [18 Pa.C.S.A. §] 4914[9] in the fashion proffered by the Commonwealth would, in effect, impose a criminal liability on anyone for failing to provide truthful information as to his/her identity anytime a police officer asked, regardless of the basis for the request or the level of suspicion accompanying the request. Not only would such an obligation seemingly contradict the explicit language of the statute, it would seemingly contravene accepted Fourth Amendment jurisprudence.

*Commonwealth v. Barnes*, 14 A.3d 128, 132 (Pa. Super. 2011); *see In re D.S.*, 39 A.3d 968, 974 (Pa. 2012) (adopting this Court's construction of section 4914).

In this case, at the time Officer Sneeringer requested identification from Appellee, Officer Sneeringer did not inform Appellee that he was under investigation. Therefore, under *Barnes* and *D.S.*, Appellee did not violate section 4914. *Barnes* addressed whether the Commonwealth met its *prima facie* burden for a violation of section 4914. *See Barnes*, 14 A.3d at 129. *Barnes* did not address whether providing false identification information to law enforcement was a factor that can be considered when determining if law enforcement possessed reasonable suspicion that criminal activity was afoot.

---

[9] Section 4914 of Title 18 provides in relevant part: "A person commits an offense if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law." 18 Pa.C.S.A. § 4914(a).

- 14 -

We find persuasive decisions by several federal courts that have addressed this issue. In **United States v. Chaney**, 584 F.3d 20 (1st Cir. 2009), the passenger in the vehicle provided police with a false name, appeared excessively nervous, and gave other answers that did not make sense to police. **Id.** at 26. The United States Court of Appeals for the First Circuit held that such information provided police with reasonable suspicion to believe that criminal activity was afoot and police had the right to attempt to ascertain the passenger's true identity. **Id.** In **United States v. Smith**, 164 F. App'x 825 (11th Cir. 2006) (*per curiam*), the district court concluded that, based in part on a passenger providing a false name, officers had reasonable suspicion that criminal activity was afoot. **See id.** at 827. The United States Court of Appeals for the Eleventh Circuit affirmed, concluding that the district court's legal conclusions were correct. **See id.** at 828-829. In **United States v. Brigham**, 382 F.3d 500 (5th Cir. 2004) (*en banc*), the *en banc* United States Court of Appeals for the Fifth Circuit held that, "[o]nce [police] learned that [the name provided by a passenger] was likely false, [police] acted reasonably, with further questioning, to uncover [the passenger's] true identity and perform a correct background check." **Id.** at 509.

Decisions issued by our sister states' courts align with this federal precedent. In **Missouri v. Ford**, 445 S.W.3d 113 (Mo. App. 2014), police requested identification from the defendant, a passenger in a lawfully

stopped motor vehicle. *Id.* at 122. The defendant appeared nervous and provided false identification information. The Missouri Court of Appeals held that, "[t]hese facts are sufficient to support a reasonable suspicion of criminal activity during the period of lawful detention and justified extending the investigation." *Id.* (citation omitted). In ***California v. Nuristani***, 2010 WL 3442036 (Cal. App. Sept. 2, 2010) (unpublished), officers requested identification for a vehicle's passenger. The passenger gave a false name, and officers therefore extended the stop to ascertain the passenger's true identity. The California Court of Appeals held that:

> Once Officer Mendoza learned that the rear passenger had provided a false name and date of birth, the focus of the stop necessarily shifted from the Vehicle Code violations to discovering the rear passenger's true identity. As a result, the officers did not unreasonably prolong the traffic stop and the continued detention of Nuristani and his passengers was lawful.

*Id.* at *4.

All of these decisions focused on the fact that the passenger gave a false name to police. These decisions did not discuss whether giving such a false name was a separate violation of the law which provided police with reasonable suspicion. Instead, in each of these cases the providing of a false name to police provided reasonable suspicion which permitted officers to investigate further to ascertain the passenger's true identity.

These decisions are consistent with the overwhelming weight of Pennsylvania jurisprudence. Our Supreme Court, and this Court, have consistently emphasized that reasonable suspicion must be judged based

upon the totality of the circumstances. *E.g. Ranson*, 103 A.3d at 78 (citation omitted); *Commonwealth v. Scarborough*, 89 A.3d 679, 684 (Pa. Super. 2014), *appeal denied*, 102 A.3d 985 (Pa. 2014); *In re D.M.*, 781 A.2d 1161, 1163–1164 (Pa. 2001); *Commonwealth v. Taylor*, 771 A.2d 1261, 1268–1269 (Pa. 2001). Therefore, courts cannot employ a "divide and conquer" approach, *i.e.*, examine each fact individually to determine if that fact alone is sufficient, when evaluating whether police possessed reasonable suspicion. *Commonwealth v. Carter*, 105 A.3d 765, 772 (Pa. Super. 2014) (*en banc*) (citations omitted); *Commonwealth v. Walls*, 53 A.3d 889, 895 (Pa. Super. 2012) (citation omitted); *see also United States v. Arvizu*, 534 U.S. 266, 274 (2002).

"[E]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Davis*, 102 A.3d 996, 1000 (Pa. Super. 2014) (internal quotation marks and citation omitted); *Ranson*, 103 A.3d at 77 (citation omitted); *Commonwealth v. Houck*, 102 A.3d 443, 456 (Pa. Super. 2014) (citation omitted); *Clemens*, 66 A.3d at 379; *Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011) (citation omitted). Providing a false name to law enforcement is one such innocent fact. Although that fact alone does not provide reasonable suspicion that criminal activity is afoot, there is no prohibition on considering this fact when evaluating the totality of the circumstances. Therefore, we conclude that when a passenger provides

false information to police during a traffic stop, that information can be considered when determining if there is reasonable suspicion that criminal activity is afoot. Hence, this factor may be considered in deciding whether an officer acts reasonably in extending a lawful traffic stop.

In this case Officer Sneeringer had three other factors that indicated criminal activity may be afoot. First, Appellee was excessively nervous during the encounter.[10] Excessive nervousness alone cannot be the basis for reasonable suspicion. *Commonwealth v. Reppert*, 814 A.2d 1196, 1205 (Pa. Super. 2002) (*en banc*). However, excessive nervousness can be considered as part of the totality of the circumstances. *See id.* (excessive nervousness or furtive movements **alone** are not sufficient for reasonable suspicion); *Commonwealth v. Foglia*, 979 A.2d 357, 364 (Pa. Super. 2009) (*en banc*), *appeal denied*, 990 A.2d 727 (Pa. 2010) (considering furtive movements when determining if reasonable suspicion existed). This interaction also occurred at night in a high crime area which was known for drug activity. Although this fact alone is also insufficient to provide reasonable suspicion, this Court, our Supreme Court, and the Supreme Court of the United States have consistently relied upon this fact when examining the totality of the circumstances. *Carter*, 105 A.3d at 774; *Davis*, 102 A.3d

---

[10] Specifically, Officer Sneeringer testified that when he approached Appellee "he appeared to be extremely nervous. His shirt appeared to be soaked through with sweat . . . he repeatedly dried his face with a white towel. In his right hand, he was holding a cell phone and he was shaking, very easily observed." N.T., 1/10/14, at 18.

at 1000; ***Commonwealth v. Thompson***, 985 A.2d 928, 936 (Pa. 2009); ***D.M.***, 781 A.2d at 1164; ***Illinois v. Wardlow***, 528 U.S. 119, 124–25 (2000). Finally, officers witnessed Appellee engage in suspicious activity with the driver of the Mazda (who Sergeant Reilly knew had previously been arrested for drug possession, N.T., 1/10/14, at 7) and another male.[11] Although this information alone did not provide reasonable suspicion, it again is one factor that may be considered. ***See Commonwealth v. Dixon***, 997 A.2d 368, 380 (Pa. Super. 2010), *appeal denied*, 26 A.3d 482 (Pa. 2011) (citations omitted); ***Thompson***, 985 A.2d at 935-936; ***see also Commonwealth v. Walton***, 63 A.3d 253, 258 (Pa. Super. 2013) (suspicious transaction, without more, insufficient to establish reasonable suspicion).

Thus, we conclude that this is one instance where the confluence of innocent facts led to reasonable suspicion that criminal activity was afoot. Appellee was in a high crime, high drug area at night and engaged in a suspicious interaction with another individual. When a lawful vehicle stop

---

[11] Specifically, Sergeant Reilly testified that he observed the driver of the Mazda exit his car and walk across the street to talk with Appellee. N.T., 1/10/14, at 9. The driver and Appellee appeared to converse and then both walked back to the Mazda at which time another male walked up to Appellee. ***Id***. Sergeant Reilly testified that his suspicions were raised because Appellee and the unknown male "were very close to each other in a manner that's not typical for a normal conversation. They were like shoulder to shoulder to each other, and [he] couldn't see what their hands were doing" as they turned away from where Sergeant Reilly and Officer Sneeringer were located. ***Id***.

occurred, Appellee was excessively nervous. Appellee then provided officers with a false name and date of birth. This information, taken as a whole, would lead a police officer to reasonably suspect that criminal activity is afoot. *See Chaney*, 584 F.3d at 126; *Brigham*, 382 F.3d at 509; *Ford*, 445 S.W.3d at 122. Accordingly, we conclude that Officer Sneeringer possessed reasonable suspicion to extend the vehicle stop in order to confirm Appellee's true identity.

Once Officer Sneeringer detained Appellee, he was able to ascertain his true identity. Based upon this information, Officer Sneeringer learned that there was an active warrant for Appellee's arrest. This provided Officer Sneeringer with the authority to arrest Appellee. Upon arresting Appellee, Officer Sneeringer was permitted to conduct a search incident to arrest. It was during this lawful search incident to arrest that Officer Sneeringer discovered the contraband at issue in this case. Therefore, we conclude that the search and seizure in this case was lawful. Accordingly, the trial court erred by granting Appellee's motion to suppress.

In its third issue on appeal, the Commonwealth contends that the trial court erred by dismissing the charges at the same time it granted Appellee's suppression motion. As this presents a pure question of law, our standard of review is *de novo* and our scope of review is plenary. *Cf. Houghten v. Restland Mem'l Park*, 23 A.2d 497, 500 (Pa. 1942) (whether an adjudicator possessed power to act was reviewed *de novo*).

When a trial court grants a motion to suppress, it cannot enter an order dismissing those charges unless the Commonwealth so consents or the time for filing a notice of appeal has elapsed. As this Court explained:

> [T]he [suppression] court lacked power to dismiss before allowing the Commonwealth an opportunity to appeal the adverse suppression ruling. When the Commonwealth certifies, as in this case, that an order granting a defendant's motion to suppress will terminate or substantially handicap the prosecution, it is entitled to an appeal as of right. By entering an order granting suppression and concurrently dismissing all charges, the [suppression] court deprived the Commonwealth of any opportunity to exercise its absolute right to appeal from adverse suppression rulings.

*Commonwealth v. Micklos*, 672 A.2d 796, 801 (Pa. Super. 1996) (*en banc*), *appeal denied*, 686 A.2d 1309 (Pa. 1996) (citation omitted). Accordingly, the trial court erred by granting Appellee's motion for *habeas corpus* at the same time it granted Appellee's motion to suppress.

In sum, we conclude that Judge Smith did not rule on the suppression motion and, therefore, Judge Lieberman did not violate the coordinate jurisdiction rule. We conclude, however, that Officer Sneeringer possessed reasonable suspicion that criminal activity was afoot. Thus, Judge Lieberman erred as a matter of law by granting Appellee's motion to suppress. Finally, we conclude that Judge Lieberman erred by granting Appellee's *habeas corpus* motion at the same time he granted Appellee's suppression motion. We therefore reverse Judge Lieberman's order granting Appellee's motion to suppress and motion for *habeas corpus* and remand for further proceedings consistent with this memorandum.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2015