## Commonwealth v. Central Pennsylvania Quarry Stripping & Construction Company

*Richard C. Fox* of *McNees, Wallace & Nurick*, for appellant.

*Eugene J. Anastasio*, for Commonwealth.

SHELLEY, J., December 14, 1964. — This matter comes before the court on an appeal by Central Pennsylvania Quarry Stripping & Construction Company (hereinafter referred to as "defendant") from the decision of the Board of Finance and Revenue of the Commonwealth of Pennsylvania refusing to grant defendant's prayer for relief from an assessment made pursuant to the provisions of the Act of March 6, 1956, P. L. 1228 (Selective Sales and Use Tax Act, hereinafter referred to as the "Act of 1956"), as amended, 72 PS §3403-1, et seq.[1]

Under the provisions of the Act of April 22, 1874, P. L. 109, 12 PS §688, the parties have entered into a stipulation for the trial of this case without a jury.

---

[1] The assessment was for period from January 1, 1959, to May 31, 1962, in the total amount of $4,996.85 made up as follows:

| | |
|---|---|
| Use Tax | $4,193.72 |
| Interest | 542.95 |
| Penalties | 260.18 |

The parties have also stipulated the facts. We adopt their stipulation as our findings of fact and incorporate the same herein by reference. In the course of our opinion we will discuss those facts which, in our judgment, are essential for the disposition of this case.

Defendant is a Pennsylvania corporation with its office in Hazleton, Pa. It is licensed under the Selective Sales and Use Tax Act. Defendant is engaged generally in two separate businesses: (1) The construction, repair and maintenance of highways and other improvements to real estate, and (2) strip-mining of anthracite coal. The use tax deficiency in question represents use tax imposed on defendant's purchase of diesel fuel used as a fuel in engines of the equipment used by the defendant's highway, construction, repair and maintenance activities. Because the equipment in which the fuel was used was not propelled on a public highway, it is not subject to the provisions of the Pennsylvania Liquid Fuels Tax Act or the Pennsylvania Fuel Use Tax Act.[2] None of the "diesel fuel" involved in this case was used in the strip-mining equipment. Therefore, the mining exemption in the Selective Sales and Use Tax Act is inapplicable.[3]

The only question raised in this appeal is whether "diesel oil" used for the propulsion of road-building equipment is taxable as "fuel oil" under section 2(1)-(13) of the Act of 1956, as amended.

Defendant contends that "diesel oil" used for the purpose stated above is not tangible personal property as defined by section 2(1) (13) of the Act of 1956, as amended.

Defendant argues, in support of its contention, that the Commonwealth is required to overcome the presumption of nontaxability and the canon of strict con-

---

[2] Section 203(f) of the Selective Sales and Use Tax Act, supra.

[3] Section 2(j)(1) as to sales, and 2(n)(3)(i) as to use of the Selective Sales and Use Tax Act, supra.

struction of tax statutes in order to broaden the term "fuel oil" in section 2(1)(13) of the Act of 1956, as amended, to include "diesel oil" and that the Commonwealth has failed to do so.

Section 2(1)(13) of the Act of 1956, as amended by the Act of April 15, 1959, P. L. 20, supra, defines tangible personal property as including:

"Fuel oil and petroleum products for heating purposes; steam and natural, manufactured and bottled gas; electricity; intra-state telegraph service and intra-state telephone service;" [4]

The term "fuel oil" is not defined in either the Act of 1956 or in the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §501, et seq.

Article III, sec. 33, of the Statutory Construction Act, supra, 46 PS §533, provides that "words and phrases shall be construed according . . . to their common and approved usage. . . ."

There are a great number of cases applying this legislative mandate and all of the cases make it clear that statutes are presumed to employ words in their popular sense: Commonwealth v. Bay State Milling Co., 312 Pa. 28, 31 (1933) ; Commonwealth Trust Company General Mortgage Investment Fund Case, 357 Pa. 349, 355 (1947) ; Reese v. Hemphill, 411 Pa. 263, 274 (1963). Of course, the rule that statutes are interpreted by using the popular sense of the words employed is much older than the Statutory Construction Act. One of the earliest expressions of the rule by the Pennsylvania Supreme Court was in Norris Brothers

---

[4] Section 2(1) of the Act of 1956 was repealed by the Act of May 29, 1963, P. L. 49, and there was substituted section (1.1) which reads:

" 'Tangible Personal Property.' Corporeal personal property including, but not limited to, goods, wares, merchandise, steam and natural and manufactured and bottled gas, electricity, intrastate telephone and telegraph service, spirituous or vinous liquor and malt or brewed beverages and soft drinks."

v. The Commonwealth, 27 Pa. 494 (1856), and that case has long been cited, particularly in manufacturing exemption tax cases, as requiring the popular definition.

Defendant argues that the general public has given the term "fuel oil" a restrictive use and has differentiated between "fuel oil" and "diesel fuel" in that it refers to "fuel oil" as an oil used only for heating purposes. Defendant supports its conclusion by three categories of facts.

First, defendant relies on a definition of the term "fuel oil" as contained in Webster's International Dictionary III (1961), which reads as follows:

"An oil used for fuel especially in a furnace or heater and usually having a flash point higher than that of kerosene."

Second, defendant submitted the Bell Telephone Directory for Harrisburg and Nearby Communities, directing our attention to the "yellow pages" thereof, which show that the term "fuel oil" is used in the vast majority of advertisements as a synonym for heating oil with no connotation of diesel usage.

Third, defendant offered a three-part public survey, which included a random telephone survey of 216 calls; a survey conducted in a department store in the City of Harrisburg in which multiple choice questionnaires prepared by the defendant were used; and a similar survey was made at the West Shore Shopping Center [5] where 100 open response questionnaires were used.

We do not think that the surveys and the advertisements in the "yellow pages" referred to above and the dictionary definition are controlling. As to the surveys, it must be noted that a majority of the residents of the Harrisburg area consider the term "fuel oil" to mean

---

[5] West Shore Shopping Center is located several miles west of Harrisburg in Cumberland County.

oil used for heating purposes only rather than an oil used for diesel use only. The result of the surveys, in all probability, would have been quite different if the surveys had been taken of over-the-road truckers or of operators of heavy construction equipment.[6]

The advertisements in the "yellow page" section of the telephone directory only indicate that there is not a sufficiently large enough group of prospective customers of "diesel oil" so as to convince the sellers of "diesel oil" that it would be to their advantage to carry a separate advertisement in the "yellow pages". The only substantial users of "diesel oil" are large operations of over-the-road trucks and large construction companies.

As to the definition taken from a dictionary, we point to the fact that Webster's New International Dictionary (1959), defines the word "fuel" as "any matter used to produce heat or power by burning as wood, coal, peat, petroleum, gas" and "fuel oil" as "any oil used for fuel; it usually has a flash point higher than that of kerosene." Reading the definition of "fuel" into the definition of "fuel oil" would result in the definition of "fuel oil" as any oil used to produce heat or power by burning as wood, coal, peat, petroleum, gas. So it would appear that the dictionaries are not exactly in accord as to the definition of "fuel oil."

Article IV, sec. 51, of the Statutory Construction Act of May 28, 1937, 46 PS §551, provides that "The object

---

[6] The questionnaire used in the stores in Harrisburg and West Shore was, "I think that the term fuel oil usually means." This form of question, according to critique submitted by the Commonwealth, contained this observation: "The use of the word 'usually' goes likewise to its intepretation as 'most frequently' and an answer to the question so drafted would not indicate the exclusion of 'diesel oil' from the meaning of the term 'fuel oil'. It would seem to indicate that the respondent used the term 'fuel oil' more often as meaning 'a liquid use for heating purposes' rather than 'a liquid use in diesel engines'."

of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. . . ." The section further requires courts to interpret a statute in a way that gives effect to all of the provisions of the statute.

Section 203(g) of the Act of 1956, as amended, makes the following exclusion:

"The tax imposed by Section 201 shall not be imposed upon . . .

"(g) the sale at retail, or use of gasoline and other motor fuels, the sales of which are otherwise subject to excise taxes under the 'Liquid Fuels Tax Act,' May 21, 1931 (P. L. 194), as amended, and the 'Fuel Use Tax Act,' January 14, 1952 (P. L. 1965), as amended."

The legislature, in our opinion, by this exclusion, intended to eliminate double taxation of fuels subject to either the liquid fuels tax or fuel use tax and must have intended to bring fuels, other than those excluded, within the definition of tangible personal property.

Under all of the circumstances and because this was a case of first impression, defendant should not be subjected to a penalty.

. We, accordingly, conclude that (1) the term "fuel oil" as used in section 2(1)(13) of the Act of 1956 includes within it as tangible personal property, "diesel fuel" consumed by equipment used in the construction activities of defendant,[7] and (2) judgment

---

[7] In view of our determination it is not necessary for us to pass on the Commonwealth's contention that "diesel oil" could also be taxed under section 2(1)(1) and/or section 2(1)(3) of the Act of April 15, 1959, P. L. 20, which provides:

"Section 2(1)(1)

"Motor vehicles, trailers, semi-trailers and aircraft and all accessories, supplies, parts, lubricants and equipment used in the maintenance, operation or repair of such motor vehicles, trailers, semi-trailers, and aircraft;

should be entered for the Commonwealth, and enter the following

DECREE NISI

And now, December 14, 1964, unless exceptions are filed within 30 days, judgment is entered in favor of the Commonwealth in the sum of $4,193.72, with appropriate interest to be computed according to the provisions of the Act of 1956; cost to be paid by defendant. The prothonotary shall notify the parties or their counsel of this decree forthwith.

"Section 2(1) (3)

"All materials, supplies and equipment used in the construction, reconstruction, remodeling, repair and maintenance of any real estate;"