**[J-46-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 66 MAP 2015 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 386 MDA 2014 dated |
| | : | February 9, 2015 Reversing the Order |
| v. | : | of the Clinton Court of Common Pleas, |
| | : | Criminal Division, at No. CP-18-CR- |
| | : | 0000415-2013, dated February 26, |
| RAHIEM CARDEL FANT, | : | 2014 |
| | : | |
| Appellant | : | SUBMITTED: March 16, 2016 |

**OPINION**

**JUSTICE DONOHUE**                                   **DECIDED: September 28, 2016**

On October 22, 2013, Rahiem Cardel Fant ("Fant") pled not guilty to various charges related to an incident during which he allegedly stabbed a man in the abdomen and arm. Awaiting trial, he was detained at the Clinton County Correctional Facility (the "Facility"). On or about February 20, 2014, approximately one week before his scheduled trial, Fant's counsel received from the Commonwealth a production of recordings made at the Facility. All but two of the recordings consisted of conversations that occurred between Fant and his visitors in the Facility's visitation room, where inmates converse with visitors, face-to-face, through a glass partition, using a telephone-like handset apparatus ("visit conversations"). As a result of these recorded visit conversations, law enforcement personnel retrieved additional evidence they sought to use at trial.

On February 21, 2014, Fant filed a motion in limine seeking to exclude at trial the visit conversation recordings and the evidence discovered as a result of them. He argued that the recordings violated Pennsylvania's Wiretapping and Electronic Surveillance Control Act (the "Wiretap Act" or the "Act"). The Commonwealth countered that Section 5704(14) of the Act permits these recordings because it authorizes county correctional facilities to record "any telephone calls from or to an inmate," as long as certain conditions are met. Trial Court Opinion, 2/26/2014, at 2.

The Wiretap Act generally prohibits intercepting, using, or disclosing communications except pursuant to specified procedures.[1] *See* 18 Pa.C.S.A. § 5703; *see also* <u>Karoly v. Mancuso</u>, 65 A.3d 301, 303 (Pa. 2013). It is designed to safeguard individual privacy while also giving law enforcement authorities a tool to combat crime. *See* <u>Karoly</u>, 65 A.3d at 303. Consistent with the Act's emphasis on privacy, its provisions are to be strictly construed. *See* <u>Boettger v. Miklich</u>, 633 A.2d 1146, 1148-49

---

[1] Section 5703 of the Wiretap Act provides:

> Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he: (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication; (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or (3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

18 Pa.C.S.A. § 5703.

(Pa. 1993) (cautioning that "[**n**]**o** violations of **any** provisions of the Act will be countenanced, nor will the failure of prosecutors to diligently follow the strict requirements of the Act be lightly overlooked") (emphasis in original); *see also* Commonwealth v. Spangler, 809 A.2d 234, 237 (Pa. 2002) (explaining that the Act provides an exclusionary remedy that extends to non-constitutional violations).

Section 5704 of the Wiretap Act provides eighteen exceptions to the general prohibition on intercepting communications, including an exception, the interpretation of which is at issue in the present case, allowing employees of county correctional facilities to monitor and record inmate "telephone calls" as long as inmates are notified in writing that such calls may be recorded and anyone calling into the facility is also told that their call may be monitored and recorded. 18 Pa.C.S. § 5704(14). Specifically, the Act provides:

> It shall not be unlawful and no prior court approval shall be required under this chapter for:
>
> (14) An investigative officer, a law enforcement officer or employees of a county correctional facility to intercept, record, monitor or divulge any telephone calls from or to an inmate in a facility under the following conditions:
>
> (i) The county correctional facility shall adhere to the following procedures and restrictions when intercepting, recording, monitoring or divulging any telephone calls from or to an inmate in a county correctional facility as provided for by this paragraph:
>
> > (A) Before the implementation of this paragraph, all inmates of the facility shall be notified in writing that, as of the effective date of this paragraph, their telephone conversations may be intercepted, recorded, monitored or divulged.
> >
> > (B) Unless otherwise provided for in this paragraph, after intercepting or recording a telephone conversation, only

the superintendent, warden or a designee of the superintendent or warden or other chief administrative official or his or her designee, or law enforcement officers shall have access to that recording.

(C) The contents of an intercepted and recorded telephone conversation shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

(ii) So as to safeguard the attorney-client privilege, the county correctional facility shall not intercept, record, monitor or divulge any conversation between an inmate and an attorney.

(iii) Persons who are calling into a facility to speak to an inmate shall be notified that the call may be recorded or monitored.

(iv) The superintendent, warden or a designee of the superintendent or warden or other chief administrative official of the county correctional system shall promulgate guidelines to implement the provisions of this paragraph for county correctional facilities.

18 Pa.C.S.A. § 5704(14).

During a suppression hearing on February 25, 2014, the Commonwealth presented testimony, in relevant part, from Jackie Motter, Warden at the Facility (the "Warden").[2] The suppression court questioned the Warden as to how the visit conversation apparatus works.

---

[2] The Commonwealth also introduced the following exhibits: (1) Telephone Regulations for Inmates, Policy Number 100-15 from the Clinton County Correctional Facility Policy and Procedure Manual ("Telephone Regulations"); (2) the Clinton County Correctional Facility Inmate Handbook ("Inmate Handbook"); (3) the Inmate I.D. Card Agreement and Acknowledgement of Inmate Rules and Regulations; and (4) the Clinton County Correctional Facility Inmate Telephone I.D. Number Release Form ("Telephone ID Form").

The Court: [Visit conversations] is when I sit across the glass from you and pick it up?

The Witness: Yes.

The Court: Do you have to hit any number?

The Witness: Yes. You use your personal ID number.[3]

The Court: And it goes through there?

The Witness: Yes.

The Court: And it rings on the other side?

The Witness: I don't think it rings. You just punch your number in and --

The Court: It activates it?

The Witness: Yes.

The Court: It doesn't go through a telephone company?

The Witness: Well, if it's on the computer they would have access. Oh, through a telephone company, no.

N.T., 2/25/2014, at 14 (footnote added).

Following the Warden's testimony, the suppression court engaged in further discussion about the visit conversations with counsel for the Commonwealth, Karen Kuebler.

The Court: But it never hits a telephone company?

---

[3] The Warden also testified that the "personal ID number" used for visit conversations is the same "personal ID number" used for the inmate telephone system. N.T., 2/25/2014, at 15; *see also* Telephone Regulations at 1-2 (providing that an "inmate may call a person of his or her choice outside the facility on a telephone provided for that purpose" and "inmate will be given a Telephone Identification Number (TID)" which will be "entered into the system by the Intake Officer upon commitment of a new lock-up").

Ms. Kuebler: It doesn't -- it doesn't get recorded by the telephone company. It gets recorded by the inmate phone company. It doesn't get recorded by Verizon.

Id. at 16.

Following the hearing, the suppression court granted Fant's motion to suppress, making several findings of fact before concluding that the visit conversations were not "telephone calls" because the "every day common sense use of the word telephone does not include this scenario." *See* Trial Court Opinion, 2/26/2014, at 2. In articulating its findings of fact, as required by Pennsylvania Rule of Criminal Procedure 581(I),[4] the

---

[4] Pennsylvania Rule of Criminal Procedure 581(I) provides that "[a]t the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought." Pa.R.Crim.P. 581(I). Although the suppression court did not enter findings of fact and conclusions of law on the record before adjourning the suppression hearing, *see* N.T., 2/25/2014, at 44-45, it took the matter under advisement overnight, and issued factual findings and conclusions of law in an opinion the very next day. *See* id.; Trial Court Opinion, 2/26/2014, at 2-3. The Commonwealth argues that the suppression court's next-day opinion does not fulfill the mandate of Rule 581(I). *See* Brief for the Commonwealth at 14. We disagree.

The purpose of Rule 581(I) is to (1) permit a "losing party to make a more intelligent assessment of whether or not to burden the appellate justice system with an appeal of the suppression ruling" and (2) ensure that the trial judge and the appellate courts will have a record upon which they can timely and meaningfully discharge their responsibilities, especially in cases where the trial judge responsible for issuing a subsequent Rule 1925 opinion may be different than the suppression judge. *See* Commonwealth v. Millner, 888 A.2d 680, 688-89 (Pa. 2005) (finding error where suppression court had neither issued findings of fact before adjourning the suppression hearing nor in an opinion filed prior to the losing party's appeal). A suppression court opinion issued the day after a suppression hearing in no way undermines these dual purposes.

Additionally, the Commonwealth's citation to Pennsylvania Rule of Appellate Procedure 1921 and Commonwealth v. Young, 317 A.2d 258 (Pa. 1974), which provide, respectively, that an opinion is not part of the record on appeal and that "an appellate court may consider only the facts which have been duly certified in the record on (continued…)

suppression court found that the visit conversations utilize "an apparatus that resembles a telephone," that requires Fant to "punch[] in an i.d. number," after which point Fant's visitor "across the glass from [him] picks up that apparatus and a discussion ensues." Id. Furthermore, the suppression court found that "these conversations do not involve the use of a telephone company, telephone lines or equipment outside the correctional facility." Trial Court Opinion, 2/26/2014, at 2-3. In the suppression court's subsequent 1925(a) opinion, it reiterated that "the facts are clear that the [visit] conversations occurred without the use of a telephone company, transmission of voices through telephone lines or anything that would resemble what this [c]ourt would determine to be a 'telephone call'." See Trial Court Opinion, 4/1/2014, at 1.[5]

The Commonwealth appealed the suppression court's decision and the Superior Court reversed. First, it properly enunciated the standard of review governing suppression court rulings:

> In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence for the prosecution as read in the context of the

<hr>

(…continued)
appeal," is inapposite. See id. It is certainly true that an appellate court may consider only the **facts** which have been certified on the record, but this does not prohibit a trial court from making its **findings** of fact in a timely subsequent opinion, i.e. outside the record. Even the Superior Court, whose opinion the Commonwealth now asks us to affirm, held that the trial court made findings of fact pursuant to Rule 581(I). See Commonwealth v. Fant, 109 A.3d 775, 778 (Pa. Super. 2015).

[5] We note here that the final segment of this statement by the suppression court, i.e. "or anything that would resemble what this [c]ourt would determine to be a 'telephone call'," is not a finding of fact, but instead a conclusion of law. Findings of fact supported by the record are binding on this Court; conclusions of law are not.

record as a whole remains uncontradicted. Moreover, if the evidence supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusion drawn from those findings.

Commonwealth v. Fant, 109 A.3d 775, 777 (Pa. Super. 2015) (citations omitted).

Then, of relevance to the issue before this Court, the Superior Court held that "the [suppression] court's finding that the recordings in question did not involve a telephone company is not supported by the evidence." Id., 109 A.3d at 779 n. 3. Without citation to authority, the Superior Court announced that it "must consider" from the record "additional uncontradicted facts not enunciated by the [suppression] court" in order to determine whether the suppression court committed legal error. Id. at 779. Included in these additional "facts" was the Superior Court's own finding that the visit conversations "go through and are recorded by the inmate phone company." Id. (citing N.T., 2/25/2014, at 14,16). The Superior Court then indicated that this "uncontradicted fact" required it to conclude that "the [suppression] court's finding that the recordings in question did not involve a telephone company is not supported by the evidence." See id. at 779 n.4 (citing id. at 779 n.3).

Next, the Superior Court embarked on an effort to ascertain the meaning of "telephone" as used in the Wiretap Act. Id. at 780. Noting that the word is not statutorily defined, the Superior Court considered four different dictionary definitions including, (1) "an instrument for reproducing sounds, especially articulate speech, at a distance;" (2) "an electrical device for transmitting speech, consisting of a microphone and receiver mounted on a handset;" (3) "a device that is connected to a telephone system and that you use to listen or speak to someone who is somewhere else;" and (4) a "telephone consists of two essential parts; a microphone and a speaker. This allows

the user to speak into the device and also hear transmissions from the other user." Id.

The first two definitions were offered by the Commonwealth, the third was offered by Fant, and the Superior Court offered the fourth.

Discounting the suppression court's finding that the visit conversations do not involve a telephone company, the Superior Court pointed instead to "the additional uncontradicted fact" not found by the suppression court that the apparatus used for visit conversations is "connected to the 'inmate phone company'." Id. at 779, 780-81 (citing N.T., 2/25/2014, at 14,16). The Superior Court then concluded that "under any of the [four] 'common [dictionary] meanings'," including the third definition put forth by Fant, the apparatus in question is a telephone. Id. at 781. In the Superior Court's view, the visit conversations are telephone calls because the "Act does not distinguish between external and internal telephone calls from or to an inmate in a county correctional facility." Id.

We granted Fant's petition for allowance of appeal and the case was submitted to us on the briefs. The issue presented is whether the Superior Court erred in holding that the visit conversations constitute telephone calls subject to the exception set forth in Section 5704(14) of the Wiretap Act. *See* id. To answer this question, we first determine the meaning of "telephone" under the Act and then apply that meaning to the suppression court's findings of facts. Ultimately, we hold that the term "telephone call" in Section 5704(14) does not include the visit conversations and conclude that the suppression court's decision to suppress the recordings of those conversations was proper.

The meaning of "telephone call" in Section 5704(14) is a question of statutory interpretation. "Because statutory interpretation is a matter of law," our standard of review is de novo. *See* Commonwealth v. Wright, 14 A.3d 798, 814 (Pa. 2011). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A § 1921(a). The best indication of the legislature's intent may be found in the plain language of the statute. Wright, 14 A.3d at 814.

As the Wiretap Act does not define the term "telephone call," we must give the term its ordinary meaning. *See* Centolanza v. Lehigh Valley Dairies, Inc., 658 A.2d 336, 340 (Pa. 1995) ("Absent a definition in the statute, statutes are presumed to employ words in their popular and plain everyday sense, and the popular meaning of such words must prevail."); Commonwealth v. Harner, 617 A.2d 702, 705 (Pa. 1992) (noting that clear and unambiguous statutory language must be given effect in accordance with its plain and common meaning). Similarly, "it is not for the courts to add, by interpretation … a requirement which the legislature did not see fit to include. Consequently … although one is admonished to listen attentively to what a statute says[;][o]ne must also listen attentively to what it does not say." Wright, 14 A.3d at 814; *accord* Mohamad v. Palestinian Auth., 132 S.Ct. 1702, 1707 (U.S. 2012) (favoring a definition that matches "how we use the word in everyday parlance" and observing that the legislature "remains free, as always, to give the word a broader or different meaning. But before we will assume it has done so, there must be **some** indication [the legislature] intended such a result") (emphasis in original).

We have explained, however, that statutory context also matters. We must read a section of a statute in conjunction with other sections, construing them always with reference to the entire statute. *See* Watts v. Manheim Twp. Sch. Dist., 121 A.3d 964, 972 (Pa. 2015). By the same token, we cannot arrive at the meaning of a word, even the "ordinary" meaning, without considering the surrounding words and provisions. *See* 1 Pa.C.S.A § 1903; Horosko v. Sch. Dist. of Mount Pleasant Twp., 6 A.2d 866, 869 (Pa. 1939) (explaining that a statutory term's "common and approved usage" must be construed "having regard, of course, [for] the context in which the legislature used [it]"). Indeed, "a statute cannot be dissected into individual words, each one being thrown onto the anvil of dialectics to be hammered into a meaning which has no association with the words from which it has violently been separated." Bertera's Hopewell Foodland, Inc. v. Masters, 236 A.2d 197, 204 (Pa. 1967) *overruled on other grounds by* Goodman v. Kennedy, 329 A.2d 224 (Pa. 1974); *accord* Dolan v. U.S. Postal Service, 546 U.S. 481, 486-87 (2006) (noting that "'[a] word is known by the company it keeps'— a rule that 'is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended [legislative] breadth'").

As an initial matter, we note that one would not ordinarily consider face-to-face conversations at a prison between an inmate and his visitor to be "telephone calls." Although the inmate and his visitor use handsets to communicate through glass, this is an in-person visit bearing few characteristics of what is commonly considered to be a telephone call. And there is no indication that the Wiretap Act carries a buried implication that the term "telephone call" should be given a broader definition than the one that is commonly understood. *See* 1 Pa.C.S.A § 1903; *accord* Mohamad, 132 S.Ct.

at 1707. Moreover, as discussed in detail infra, reading the term "telephone calls" in Section 5704(14) to encompass the visit conversations is in tension with how the legislature refers to the concept of a telephone call elsewhere in the Act. *See, e.g.,* 18 Pa.C.S.A. § 5702.

As noted, supra, the Superior Court cites various dictionary definitions in its quest to identify the "common meaning" of "telephone." *See* Fant, 109 A.3d at 781. The Superior Court's collection of definitions suggests that the word "telephone" has a definitional breadth encompassing almost any instrument that facilitates a transfer of the human voice between two points, regardless of whether the instrument is capable of making or receiving a call.[6] As our analysis demonstrates, the Wiretap Act, read as a whole with attention to its purpose and various provisions, reflects that the drafters did not understand the term "telephone call" to be imbued with such broad meaning.[7]

---

[6] Dictionaries do not necessarily provide the "ordinary" meaning of a word under a statute, and should not conclude the interpretative search. *See* Commonwealth v. Hart, 28 A.3d 898, 909 (Pa. 2011) (suggesting only that a word's "common and approved usage **may** be ascertained by examining its dictionary definition") (emphasis added); *see also* Commonwealth v. Central Pennsylvania Quarry Stripping & Const. Co., 37 Pa. D. & C.2d 53, 83 Dauph. 192 (1964), *aff'd* 422 Pa. 573 (Pa. 1966) (declining to adopt a dictionary definition where "dictionary definitions are not in accord"); *accord* Dolan, 546 U.S. at 495 (rejecting a dictionary definition because "[t]he definition of words in isolation … is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities," depending on the "purpose and context of the statute").

[7] The Commonwealth argues that "an ordinary user, who simply makes a call and carries on a conversation, … neither knows nor cares whether this use involves wires, radio, microwaves, satellites, or 'voice over internet protocol' (VOIP). Talking over a telephone is a telephone call." *See* Commonwealth's Brief at 9. We find it to be irrelevant to our determination of the "common meaning" of "telephone" whether a user "knows" or "cares" how a telephone works. Moreover, we note that many of the Commonwealth's arguments are conclusory and circular, and therefore unhelpful. "Talking over a telephone is a telephone call" only if one assumes that the apparatus being used is in fact a telephone. As to the apparatus used for visit conversations, we (continued…)

To begin, we interpret the word "telephone" in the context of the words that surround it.  *See* <u>Masters</u>, 236 A.2d at 204.  Section 5704(14) permits recording "any telephone **calls from or to** an inmate in a facility," so long as the prison follows prescribed procedures.   18 Pa.C.S.A. § 5704(14) (emphasis added).   Section 5704(14)(iii) provides that "[p]ersons who are **calling into a facility** to speak to an inmate shall be notified that the call may be recorded or monitored." 18 Pa.C.S.A. § 5704(14)(iii) (emphasis added).   The use of the word "calls" alongside "telephone" indicates that the popular meaning of a telephone is a device capable of making a telephone "call."   In addition to requiring the involvement of a telephone company to connect the caller to the call recipient, making a telephone "call" also requires the dialing of a telephone number, not merely the "punch[ing] of an ID number."

Similarly, the inclusion of the phrase "from or to an inmate in a facility" immediately following "telephone calls" indicates that the legislature understood a "telephone" to be a device that is capable of reciprocal functionality, i.e., each apparatus is associated with a telephone number such that both caller and recipient have the potential to dial one another.   The procedural requirement that people "calling **into** a facility" must be notified that their calls can be recorded reinforces this definitional characteristic.   Use of the word "into" contemplates a call originating outside the prison. Visit conversations may be initiated only by an inmate entering his personal ID number. A visitor, on the other hand, cannot use the apparatus to dial or call anyone, let alone

(…continued)
make no such assumption.   Similarly, the Dissent's proposed definition of the term telephone call – "the utilization of a telephone to transmit communications from one party to another – does nothing to clarify the plain and ordinary meaning of the word. *See* Dissenting Op. at 1.

from outside the Facility; he merely sits in the Facility, behind a glass partition in the visitation room waiting to "pick up" and speak. *See* Trial Court Opinion, 2/26/2014, at 2.

Although the Act does not define the term telephone call, it makes clear that a telephone call requires the involvement of a telephone company, or "communication common carrier," by situating a telephone call, amongst other types of "aural transfers," within the definition of wire communication.[8] A wire communication is:

> Any aural transfer made in whole or in part through the use of facilities for the transmission of communication by wire, cable or other like connection between the point of origin and the point of reception, including the use of such a connection in a switching station, furnished or operated by a **telephone**, telegraph or radio **company for hire as a communication common carrier.**

18 Pa.C.S.A. § 5702 (emphasis added).[9] That the ordinary meaning of "telephone call" necessarily involves the use of a telephone company is similarly reflected in the Act's basic requirement for lawfully intercepting telephone calls. Typically, in order to intercept a telephone call, law enforcement must apply to the Superior Court for a wiretap order, which, in part, is an order directing a telephone company to place a tap

---

[8] In holding that a telephone call requires the involvement of a telephone company, we do not conclude "that a 'wire communication' requires the involvement of a 'telephone … company,'" contrary to the Dissent's suggestion. *See* Dissenting Op. at n. 3. We look to the definition of "wire communication" merely to help us understand the plain meaning of the term "telephone call," in context of the Act. We find that the definition of "wire communication" encompasses, among other things, a communication that involves a "telephone … company for hire as a communication common carrier," *see* 18 Pa.C.S.A. § 5702, which can only refer to what is commonly understood as a "telephone call."

[9] A "communication common carrier" is "[a]ny person engaged as a common carrier for hire, in intrastate, interstate or foreign communication by wire or radio or in intrastate, interstate or foreign radio transmission of energy; however, a person engaged in radio broadcasting shall not, while so engaged, be deemed a common carrier." 18 Pa.C.S.A. § 5702.

on a specific line of communication.  *See* 18 Pa.C.S.A. § 5712(f); *see also* <u>Boettger v. Loverro</u>, 587 A.2d 712, 718 (Pa. 1991) (making reference to the "mandatory cooperation by telephone companies" under the Act); *see also* Superior Court Operating Procedures §§ 65.65(I) ("If requested by the applicant, the order shall direct the pertinent communications common carrier to furnish the applicant with all information, facilities and technical assistance necessary to accomplish the interception…"), 65.68 ("At the time the original order is signed, a duplicate original should also be signed for presentation to the communication common carrier.").

Absent the exception set forth in Section 5704(14), intercepting telephone calls to or from an inmate in a county correctional facility would require an application for a wiretap order, and that order would enlist a telephone company to assist in the interception.  *See* <u>id.</u>  Section 5704(14) removes the need for court approval with respect to intercepting telephone calls to or from inmates, but its reference to "telephone calls" must be read consistently with other provisions of the Act.  *See* <u>Watts</u>, 121 A.3d at 972.  The legislature's determination that the Superior Court may order the participation of a telephone company in an authorized interception indicates that the legislature understood the term "telephone call," ordinarily, to be the sort communication that relies on the operation of a telephone company.[10]

Therefore, we hold that the common sense, plain meaning of a "telephone call," as understood in the context of the Wiretap Act, is a communication that involves the (1)

---

[10] The Dissent appears to suggest that we are engaging the rules of statutory construction relevant to "ambiguous" terms. *See* Dissenting Op. at 4. We are not. We find the term telephone call to be unambiguous and engage only the rules of statutory interpretation relevant to determining the term's plain and ordinary meaning as understood in the context of the Wiretap Act.

dialing of a telephone number, and; (2) an apparatus that is connected by wire or the like to a telephone company. By virtue of these features, a "telephone call" (3) permits a caller to converse with a call recipient whose similar apparatus is associated with the dialed telephone number.

As an analytical matter, ascertaining the meaning of "telephone" under the Act does not fully resolve the issue before us. The second question in this case is whether the record supports the suppression court's finding that the visit conversations do not, in fact, "involve the use of a telephone company…outside the [Facility]." *See* Trial Court Opinion, 2/26/2014, at 3. The Superior Court concluded that "the [suppression court's] finding that the **recordings** in question did not involve a telephone company is not supported by the evidence." Fant, 109 A.3d at 779 n.3. (emphasis added).[11] The Superior Court erred in this regard. The uncontradicted evidence in the record supports the suppression court's finding; the Superior Court was therefore bound by it, and so are we. *See* In re L.J., 79 A.3d 1073, 1080-85 (Pa. 2013) (explaining that if the suppression court's factual findings are supported by the record, a reviewing court may only reverse the suppression court's ruling if the suppression court erred in applying the law to those factual findings).

---

[11] The proper statement of the suppression court's finding of fact is "**these conversations did not involve the use of** a telephone company, **telephone lines or equipment outside the [Facility]."** *See* Fant, 109 A.3d at 778 (emphasis added); *see also* Trial Court Opinion, 2/26/2014, at 3. After initially quoting the suppression court verbatim, the Superior Court improperly reframed the suppression court's finding of fact as "the **recordings** in question did not involve a **telephone company**." *See* Fant, 109 A.3d at 779 n.3 (emphasis added). Although there is support in the record even for the finding of fact as reframed by the Superior Court, we highlight the distinction because of its potential to be unfairly outcome determinative, and we continue our analysis based on the suppression court's actual finding of fact.

First, the Warden's testimony was clear that the visit conversations "[do not] go through a telephone company." *See* N.T., 2/25/2014, at 14 ("Oh, through a telephone company, no."). Furthermore, her testimony that only a "personal ID number" -- not a telephone number -- is required to "activate" the visit conversation is additionally supportive of the trial court's finding of fact that the visit conversations do not use a "telephone company, telephone lines or equipment outside the [Facility]." *See* id. The "personal ID number," as we understand it, essentially serves to turn on the visit conversation apparatus and enable a recording function. *See* id. There is no dispute that recordings of the visit conversations were saved to a Facility computer server, but this evidence does not invalidate the trial court's finding that the conversations themselves did not involve the use of an outside telephone company. *See* id.

Moreover, evidence as to the non-involvement of a telephone company remains uncontradicted throughout the record. The Superior Court's citation to a statement by Attorney Kuebler, the prosecutor representing the Commonwealth, is inapposite. *See* N.T., 2/25/2014, at 16. A statement by counsel during a suppression hearing is not evidence of record and the Superior Court may not consider such a statement when analyzing whether the record supports the suppression court's findings of fact. *See* Commonwealth v. Montgomery, 626 A.2d 109, 113 (Pa. 1993) (noting that "trial counsel's statement of facts are not considered evidence"), *abrogated on other grounds by* Commonwealth v. Burke, 781 A.2d 1136 (Pa. 2001). Even if Attorney Kuebler's statement fell within the Superior Court's proper scope of review, however, her statement simply does not controvert the Warden's testimony and is equally supportive of the suppression court's finding of fact that the visit conversations "do not involve the

use of a telephone company ... outside the Facility." *Compare* Trial Court Opinion, 2/26/2014, at 3, *with* N.T., 2/25/2104, at 16 (Attorney Kuebler acknowledging that the visit conversations are not "recorded by a telephone company," but instead "by the inmate phone company").

We can speculate that the "inmate phone company," referenced by Attorney Kuebler as distinct from a "telephone company," is Inmate Telephone Inc. (ITI), the entity that provides the Facility with its Inmate Telephone Management System (ITM). ITM receives a brief description in the Facility's "Telephone Regulations for Inmates," which were admitted as evidence. *See* Telephone Regulations at 1. These Regulations state that ITM "empowers [the Facility] in the area of security, call control, live call monitoring, call recording and long term tape archiving, and site-specific reports." *See* id.

Neither the Warden nor Attorney Kuebler considered the inmate phone company to be a "telephone company." *See* N.T., 2/25/2014, at 14, 16. Moreover, given its limited functionality related only to monitoring and recording, the suppression court accurately found that the visit "conversations do not involve the use of a telephone company, telephone lines or equipment outside the [Facility]." Nor does the fact that ITM is also used to record actual telephone calls, which require the inmate to enter his personal ID number **and** to dial a telephone number, contradict the trial court's finding that visit conversations occur without the use of an outside telephone company.[12] *See infra* n.3.

---

[12] We note that the Pennsylvania Public Utility Commission (the "Commission"), regulates and assesses telephone companies or carriers in Pennsylvania. A "telephone (continued…)

We therefore conclude that the Superior Court erred in holding that "the record does not support the trial court's legal conclusion that the 'apparatus that resembles a telephone' is not a telephone and that the recorded telephone 'visit' conversations are not subject to the exception set forth in § 5704(14) of the Wiretap Act." *See* Fant, 109 A.3d at 781. As the foregoing reveals, the ordinary meaning of "telephone" under the Act requires both the dialing of a telephone number and the involvement of a telephone company in connecting a caller to his or her call recipient. By contrast, the visit conversations are activated when an inmate merely "punches in an ID number," not a telephone number. *See* Trial Court Opinion, 2/26/2014, at 2. There is no dispute as to this fact. Additionally, there is uncontradicted testimony that no "telephone company" is involved in facilitating the visit conversations. *See* N.T., 2/25/2014, at 14. For these reasons, the suppression court's decision to suppress the visit conversations was proper. They are not "telephone calls," and they are not subject to the county correctional facility "telephone" exception under the Wiretap Act.[13] *See* 18 Pa.C.S.A. § 5704(14).

---

(…continued)
company" is defined under Commission regulations as "[a] public utility which provides regulated telecommunication services subject to Commission jurisdiction." 52 Pa. Code § 63.132. The Commission's website publishes a list of telephone companies servicing every county in the Commonwealth. Unsurprisingly, Inmate Telephone Inc., the company that enables the recording of visit conversations at the Facility, does not appear anywhere on this list. *See* Telephone Carriers by County, http://www.puc.state.pa.us/consumer_info/telecommunications/telephone_companies.aspx (last visited June 2, 2016). We find the contention that the "inmate phone company" is a "telephone company" to be disingenuous at best. It is certainly not a "telephone company" pursuant to 52 Pa. Code § 63.132 or a "communication common carrier" as defined under the Act. *See* 18 Pa.C.S.A. § 5702.

[13] Referencing the "right-for-any-reason" doctrine, the Commonwealth urges us to affirm the Superior Court on an alternative ground, not raised or argued by the
(continued…)

(…continued)

Commonwealth below, specifically that there was no "interception" as that term is defined in the Wiretap Act. Brief of the Commonwealth at 17-19. According to the "right-for-any-reason" doctrine, appellate courts are not limited by the specific grounds raised by the parties or invoked by the court under review, but may affirm for any valid reason appearing as of record. *See*, *e.g.*, Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC, 948 A.2d 752, 761 (Pa. 2008). An issue arises in connection with the application of the doctrine by a discretionary review court like this one, namely whether the doctrine permits the affirmance of a trial court's decision for any reason or, conversely, that of the intermediate appellate court. *See generally* Thomas G. Saylor, Right for Any Reason: An Unsettled Doctrine at the Supreme Court Level and An Anecdotal Experience with Former Chief Justice Cappy, 47 Duq. L. Rev. 489, 495 (2009). While we find this to be an interesting issue, which has apparently never clearly been resolved in our prior cases, we need not address it here, as it has no application in this case.

Even if we were to consider the Commonwealth's proposed alternative ground on its merits, it provides no basis for affirming the Superior Court's decision. If the visit conversation recordings do not meet the statutory definition of "interception," we would be left with a scenario involving the recording by law enforcement of ostensibly private communications. Absent a showing that Fant lacked a reasonable expectation of privacy in these visit conversations, suppression is still appropriate to remedy a constitutional violation, if not a statutory one. *See* Commonwealth v. Enimpah, 106 A.3d 695, 703 (Pa. 2014). Here, the suppression court found that Fant was alone in a room with a visitor, although separated by glass, and that there was no evidence that Fant had been warned that the conversation was not private or could be intercepted. As such, the suppression court concluded that Fant "had an expectation of privacy in this matter." Trial Court Opinion, 4/1/2014, at 2. The Commonwealth does not argue to the contrary, either as a matter of fact or law. Further, although it appears from the record that the Facility notified inmates and outside callers that their "telephone calls" may be recorded, these notifications related to "telephone calls," exclusively. *See* Telephone Regulations at 1-2; *compare* Inmate Handbook at 7 (providing, under a subheading called "3001 telephone calls," that "telephone calls are subject to monitoring, recording and may be intercepted or divulged") *with* id. at 9 (under subheading called "3003 Visiting," no mention of monitoring or recording visit conversations). There is no support in the record that inmates and visitors are notified that their visit conversations may be recorded.

Because the Commonwealth's alternative argument lacks any merit, our decision does not contravene either side of the right-for-any-reason debate referenced herein, as no basis exists to affirm the Superior Court's decision. In reversing the Superior Court's order, we are upholding the trial court's ruling on grounds that were raised, briefed and adjudicated in the courts below.

(continued…)

Order reversed.  Jurisdiction relinquished.

Chief Justice Saylor and Justice Dougherty join the opinion, Justice Todd joins the opinion except for its mandate and Justice Wecht joins the opinion except for footnote 13.

Justice Wecht files a concurring opinion.

Justice Todd files a concurring and dissenting opinion.

Justice Baer files a dissenting opinion in which Justice Mundy joins.

---

(…continued)

Finally, the Dissent largely ignores the trial court's finding that Appellant "had an expectation of privacy in this matter," *see* Trial Court Opinion, 4/1/2014, at 2, when it posits that, even if the visit conversations are not telephone calls, we should remand to the Superior Court to address "whether the trial court erred in granting suppression absent a finding that Appellant had an expectation of privacy" in the visit conversations. *See* Dissenting Op. at 5-6, n. 3 (citing only a nonbinding and inapposite case, Commonwealth v. Prisk, 13 A.3d 526, 532 (Pa. Super. 2011), wherein the Superior Court found that a prisoner had no expectation of privacy, pursuant to Section 5704(2)'s "home" exception, in a conversation with his victim, who wore a recording device during a visit conducted in a room in which up to three separate visits could occur at one time).