J-A14017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                            :             PENNSYLVANIA
                                            :
              v.                        :
                                            :
                                            :
THOMAS AUGUST RABOIN          :
                                            :
                Appellant          :     No. 976 WDA 2018

Appeal from the Judgment of Sentence Entered June 11, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0009844-2017

BEFORE: OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:      **FILED: DECEMBER 22, 2021**

Thomas August Raboin appeals from the judgment of sentence imposed following his conviction for involuntary deviate sexual intercourse with a child, unlawful contact with a minor, indecent assault person less than 13 years of age, endangering the welfare of a child, corruption of minors, and indecent exposure.[1] This Court initially affirmed Raboin's judgment of sentence. However, our Supreme Court reversed that ruling and remanded the matter back to this Court for consideration of an evidentiary issue. Having considered that issue, we vacate the judgment of sentence and remand for a new trial.

Our Supreme Court summarized the relevant factual and procedural background of this matter as follows:

_____

[1] **See** 18 Pa.C.S.A. §§ 3123(b), 6318(a)(1), 3126(a)(7), 4304(a)(1), 6301(a)(1), and 3127(a).

In January 2011, [Raboin] began dating K.B. He moved into K.B.'s home shortly thereafter, where she lived with her three minor daughters and multiple other individuals. At this time, K.B.'s eldest daughter ("the victim") was in kindergarten. [Raboin] moved out a few years later when the couple ended their relationship, at which point the victim was in second grade. During the victim's fourth-grade year, she disclosed to her mother that [Raboin] had sexually abused her while living in their home. She explained that on several occasions, [Raboin] summoned her into the shower and sexually assaulted her. K.B. immediately contacted the police, who arranged for a forensic interview.

The forensic interview was videotaped and observed by a detective behind a one-way mirror. During the interview, the victim recounted these instances of sexual abuse. She also explained several times that she complied with [Raboin's] requests because she was scared that he would hurt her, her sisters, or her mother. *See* Forensic Interview Transcript, 7/6/17, at 11, 32, 37-38. The victim also reported that [Raboin] was "really mean." *Id*. at 18. She also explained that [Raboin] would frequently "push [her] mom" and "slap her hands and push her to the ground. And I didn't tell anyone because I thought that if I did tell someone, he would try to hurt me or my mom again." *Id*. at 32.

Following this interview, the detective prepared a police report and an arrest warrant was issued. [Raboin] was subsequently arrested and charged with the following offenses: involuntary deviate sexual intercourse with a child, unlawful contact with a minor, indecent assault of a person less than thirteen years of age, endangering the welfare of a child, corruption of minors, and indecent exposure.

On March 9, 2018, [Raboin] proceeded to a jury trial. At trial, the victim testified that [Raboin] began sexually assaulting her in the shower sometime between kindergarten and second grade, but she could not recall the exact time period. She also stated that she got in the shower with [Raboin] out of fear "[b]ecause he was much taller and had once pushed [her] mother." N.T. Trial, 3/9-12/18, at 38. The victim also testified that she was afraid to tell anyone about the abuse because she believed [Raboin] might hurt her. *Id*. at 48. On cross-examination, [Raboin's] attorney attempted to draw inconsistencies between the victim's forensic interview and her

trial testimony regarding when the abuse occurred and the time period in which [Raboin] lived in the family's home. *Id*. at 68-73, 79-80.

The Commonwealth also called as witnesses K.B. and the detective who observed the forensic interview. Both corroborated the victim's trial testimony to the extent she relayed the same information concerning the assault when questioned by them. During cross-examination of the detective, [Raboin's] attorney similarly attempted to draw inconsistencies between the victim's forensic interview and the detective's trial testimony. *Id*. at 159-63. He inquired whether the victim ever mentioned during the forensic interview that [Raboin] would call out to the victim from the shower and ask her to come in, to which the detective replied, "I don't think so." *Id*. at 160. The detective also recalled the victim stating that the abuse took place when she was in kindergarten. Defense counsel challenged this by asking the detective whether he was certain and proceeded to confront him with the police report prepared based on the victim's forensic interview. The report stated that "a former boyfriend was in the bathroom when [the victim] was eight years old and sexually assaulted her numerous times." *Id*. at 161. The detective responded by explaining he was unsure how old children are in kindergarten, which is why he also included in the report, "See DVD for full interview." *Id*.

[Raboin] testified in his own defense at trial, denying the allegations. At the conclusion of [Raboin's] presentation of evidence, the Commonwealth requested to play the victim's forensic interview in rebuttal on the basis that it was a prior consistent statement. *See* Pa.R.E 613(c)(1). [Raboin] objected to the admission of the interview in its entirety. Then, following a lengthy in-chambers discussion involving specific objections to portions of the forensic interview, the trial court largely permitted its introduction, aside from several pages that the court reasoned were hearsay. The trial court's rationale for allowing introduction of the forensic interview was that it constituted a prior consistent statement and rehabilitative evidence. At the conclusion of the video, the trial court instructed the jury that "the forensic interview . . . offered by the Commonwealth [is] . . . what is known as a prior consistent statement, and as such, it is to be used by you only for the purpose of helping you to determine the credibility of [the victim] as she testified here in court. It is not to be used by you for proof of the truth of any matter stated here in court.

It is not to be used by you for proof of the truth of any matter stated in her forensic interview." N.T. Trial, 3/9-12/18, at 243.

The jury ultimately convicted [Raboin] of involuntary deviate sexual intercourse with a child, unlawful contact with a minor, indecent assault of a person less than thirteen years of age, endangering the welfare of a child, corruption of minors, and indecent exposure. He was sentenced to 168 to 416 months' imprisonment to be followed by five years' probation. [Raboin] filed post-sentence motions, which the trial court denied. He then filed a timely notice of appeal claiming, *inter alia*, that the trial court erred in admitting the victim's forensic interview as rebuttal evidence.

In its Pa.R.A.P 1925(a) opinion, the trial court explained that it deemed the forensic interview admissible as a prior consistent statement based on two cases, ***Commonwealth v. Willis***, . . . 552 A.2d 682 (Pa. Super. 1988), and ***Commonwealth v. Hunzer***, . . . 868 A.2d 498 (Pa. Super. 2005), which had since been called into question by, *inter alia*, ***Commonwealth v. Bond***, . . . 190 A.3d 664 (Pa. Super. 2018). Trial Ct. Op., 11/14/18, at 10. It reasoned, however, that this decision was harmless. ***Id***. The court explained that [Raboin] had an opportunity to review the interview during pretrial discovery and was also afforded an opportunity to, and did in fact, cross-examine the victim at trial concerning the reasons for her delay in reporting the assaults. ***Id***. at 10-11. The court maintained that admission of the interview was cumulative and harmless as a result. ***Id***. at 11.

[Raboin] appealed to the Superior Court, claiming the trial court erred in admitting the forensic interview during the Commonwealth's rebuttal. He specifically averred the interview was inadmissible as a prior consistent statement because it did not predate the victim's initial accusations, which [Raboin] claimed were false. In support of this position, [Raboin] relied on ***Bond***, decided only two days following the trial court's imposition of sentence, to argue the forensic interview was inadmissible under Rule 613(c).

\* \* \* \*

- 4 -

In the instant matter, the Superior Court affirmed in a unanimous, unpublished memorandum. *Commonwealth v. Raboin*, 221 A.3d 328 . . . ([Pa. Super.] 2019) (unpublished memorandum). The court recognized that in *Bond* the victim's forensic interview was deemed inadmissible as a prior consistent statement because the child's statements in the interview were not made before the alleged fabrication. [*Id*.] at *3 (citing *Bond*, 190 A.3d at 670). It then explained that the *Bond* court nonetheless concluded the victim's forensic interview was admissible as a remainder of a recorded statement pursuant to Rule 106. *Id*. (citing *Bond*, 190 A.3d at 673) ("Given the extent to which defense counsel relied on the [i]nterview [v]ideo during her cross-examination of the victim, the prosecution was entitled to introduce [the victim's] entire account of the assault in order to provide full context."). [*Id*]. The court explained that similar to *Bond*, present defense counsel thoroughly cross-examined both the victim and the assigned detective regarding the contents of the interview. *Id*. The Commonwealth was therefore permitted to admit the victim's "entire account of the assault in order to provide full context." *Id*. The Superior Court never addressed whether the victim's forensic interview was admissible as a prior consistent statement, instead relying on the alternative holding in *Bond* which found the victim's forensic interview admissible under Rule 106. *Id*. (citing *Commonwealth v. Fant*, . . . 146 A.3d 1254, 1265 n.13 (explaining "appellate courts are not limited by the specific grounds raised by the parties or invoked by the court under review, but may affirm for any valid reason appearing of record") (citations omitted)). The Superior Court therefore affirmed [Raboin's] judgment of sentence.

*Commonwealth v. Raboin*, 258 A.3d 412, 415-17 (Pa. 2021).

Following this Court's decision, Raboin filed a petition for allowance of appeal in our Supreme Court. The High Court granted the appeal to consider the following question:

Where the Commonwealth is permitted a near blanket introduction of [the] videotaped forensic examination of a child victim in a sexual assault case, during rebuttal, and thus not contemporaneous with any limited reference to said forensic examination by the defense, where numerous unfairly prejudicial statements are contained in the forensic examination, is such

appropriate under the rule of completeness set [forth] in Pa.R.E. 106?

***Commonwealth v. Raboin***, 233 A.3d 672 (Pa. 2020) (*per curiam*)

The High Court determined that defense counsel's introduction of the forensic interview through extensive questioning of the victim and the detective on cross-examination created a misleading impression that the victim's trial testimony was at odds with or contained additional information than that relayed in the forensic interview. The Court concluded that these lines of questioning permitted the Commonwealth to seek admission of additional portions of the forensic interview to provide the jury with a clear picture of the victim's statement. However, the Court ruled that, pursuant to the temporal requirements of Rule 106, the additional portions the forensic interview should have come in at or near the time of defense counsel's questioning of the victim or the detective, such as during defense counsel's cross-examination of the victim and the detective or on re-direct. The Court ruled that Rule 106 does not authorize the admission of the forensic interview on rebuttal, such as occurred in this case.

The High Court additionally ruled that the fairness requirement of Rule 106 merely allows introduction of that evidence necessary to correct the misleading impression. The High Court determined that although the admission of some of the forensic interview served to correct the misleading impression created during defense counsel's cross-examination of the victim and detective, the vast majority of it did not. For these reasons, the Court

concluded that the trial court erred in admitting nearly all of the victim's forensic interview pursuant to Rule 106.

Nevertheless, because Raboin had preserved his challenge to the trial court's alternate ruling that the forensic interview was admissible as a prior consistent statement, the High Court remanded the matter for this Court to address the admissibility of the forensic interview under Rule 613(c).[2] We therefore re-examine this matter to determine whether the forensic interview was admissible as a prior consistent statement under Rule 613(c).

Our standard of review concerning the admissibility of evidence is well-settled:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Woodard**, 129 A.3d 480, 494 (Pa. 2015).

Rule 613(c) states, in pertinent part:

(c) Witness's Prior Consistent Statement to Rehabilitate. Evidence of a witness's prior consistent statement is admissible to

---

[2] As explained above, this Court declined to address whether the victim's forensic interview was admissible as a prior consistent statement due to our ruling that the victim's forensic interview was admissible under Rule 106. **See Fant**, 146 A.3d at 1265 n.13 (explaining that appellate courts may affirm for any valid reason appearing of record). Thus, because this Court found a basis to affirm the trial court's ruling, it did not need to address the question of whether the forensic interview was admissible on any other basis.

rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:

> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or

> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).

In the instant matter, the trial court ruled at trial that the forensic interview was admissible as a prior consistent statement under **Willis** and **Hunzer**.[3] However, in its Pa.R.A.P. 1925(a) opinion, the trial court tacitly acknowledged that it's reliance on **Willis** and **Hunzer** was undermined by

---

[3] **Willis** and **Hunzer** endorsed the notion that fact-finders would see children as inherent fabulists and prone to flights of fancy and exaggeration, thereby permitting the introduction of prior consistent statements "to corroborate even unimpeached testimony of child witnesses[.]" **Willis**, 552 A.2d at 692. **Hunzer** approvingly quoted **Willis** in allowing similar evidence. **See Raboin**, 258 A.3d at 425 n.2. However, two days after Raboin's sentencing, this Court issued its decision in **Bond**, which limited **Willis** on the grounds the opinion pre-dated the enactment of Rule 613. The **Bond** Court explained that **Hunzer**'s reliance on **Willis** was *dicta*, as the prior statements were admissible under the facts of **Hunzer** to rebut an allegation of recent fabrication.

**Bond**, but instead asserted that the error was harmless. **See** Trial Court

Opinion, 11/14/18, at 10-11.[4]  The trial court stated:

> This Court permitted the playing of the video in rebuttal as a prior consistent statement.  As stated above, th[is] court relied upon **Willis** and **Hun**[**z**]**er**.  This court would again assert that the harmless error doctrine applies.  Admission of the video interview of [the victim] does not prejudice [Raboin], inasmuch as counsel for [Raboin] had reviewed the forensic interview during pretrial discovery and had a full opportunity to cross-examine [the victim] at trial regarding the reasons for her delay in reporting the sexual assaults.  In fact, counsel for [Raboin] cross-examined [the victim] regarding the forensic interview.  As the forensic interview was cumulative, any error in admitting the interview was harmless.

**Id**. (citations to the record and unnecessary capitalization omitted).

Based on our review, we conclude that some of defense counsel's cross-

examination of the victim and the detective touched on an implicit or explicit

accusation of the grounds listed in Rule 613(c)(1) because counsel attempted

to establish that the victim omitted some details from her forensic statement

and/or changed her version of events in ways that suggested her testimony

---

[4] The Commonwealth similarly acknowledges that Rule 613 does not apply under governing Superior Court precedent:

> [A]ny motive that [the victim] would have had to lie about the actions that she attributed to Raboin would have existed at the time that she submitted to the forensic interview.  Therefore, it would appear that [the trial court], as outlined in **Bond**, was not justified in admitting the video as a prior consistent statement to rehabilitate the victim.

Commonwealth's Brief at 18 (footnote omitted).

did not meet the beyond a reasonable doubt threshold needed to convict. *See Raboin*, 258 A.3d at 429 (Donohue J., concurring and dissenting opinion). Nevertheless, our Supreme Court ruled that "[a]lthough some of the interview served to correct the misleading impression created during defense counsel's cross-examination of the victim and detective, the vast majority of it did not." *Id*. at 423-24. Although the majority reached this conclusion with respect to its Rule 106 analysis, the same reasoning applies to a Rule 613(c) analysis. *See id*. at 429 (Donohue J., concurring and dissenting opinion) (reasoning that "[a]dmitting prior consistent statements that respond to an accusation of fabrication would not justify permitting statements that had nothing to do with that charge"). Thus, while some portions of the forensic interview may have been admissible under Rule 613(c), most of the interview was not. Given this determination, we need not identify each and every statement may have been justifiably admitted as prior consistent statements and which were not. *See id*. (Donohue J., concurring and dissenting opinion) (concluding that "we need not parse out which statements may have been justifiably admitted as prior consistent statements and which were not"). Instead, we conclude that the trial court abused its discretion by admitting the portions of the forensic interview which did not directly address the rationale for admitting the prior consistent statement.

Having determined that the trial court's discretion was abused, we must determine whether such error was harmless. Our legal standards governing

harmless error are well-settled. An error warrants relief only if the appellate court is convinced beyond a reasonable doubt that the error is harmless. ***Commonwealth v. Story***, 383 A.2d 155, 162, 164 (Pa. 1978) (holding that "an error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict"). In making such a determination, we are guided by the following principles:

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Smith***, 861 A.2d 892, 897 (Pa. 2004). Whenever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless. ***Story***, 383 A.2d at 164. When reviewing for harmless error, the appellate court considers only the uncontradicted evidence and, having done so, proceeds to determine whether that body of uncontradicted evidence was so overwhelming that the erroneous admission of the evidence could not have impacted the verdict. ***See Commonwealth v. Fitzpatrick***, 255 A.3d 452, 470 (Pa. 2021). The Commonwealth bears the burden of proving that the error was harmless beyond a reasonable doubt. ***Story***, 383 A.2d at 162 n.11.

In the instant matter, the evidence of abuse was disputed. Raboin took the witness stand and denied all of the allegations levied against him. Several

defense witnesses testified that Raboin was never alone in the house with the victim, and that another adult resident or a babysitter was always present when Raboin was home. Raboin himself similarly testified that there were always multiple adults in the home when the victim was there. Thus, we cannot conclude that there is any body of uncontradicted evidence which was so overwhelming that the erroneous admission of the forensic interview could not have impacted the verdict.

Nor can we conclude that the erroneously admitted portions of the forensic interview were merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence. Without explanation, the trial court concluded that "the forensic interview was cumulative" Trial Court Opinion, 11/14/18, at 11. The Commonwealth contends that the forensic interview was cumulative of the victim's trial testimony that she was afraid Raboin might hurt her or her family if she reported the abuse. Commonwealth's Brief at 39. However, in the forensic interview, the victim expressed more than just a general fear of Raboin. Indeed, the victim stated in the interview that Raboin "was really mean," physically abused her mom, and would withhold food from her and her siblings when he watched them. **See** Forensic Interview Transcript, 7/6/17, at 18; **see also id**. at 31 (where the victim stated that "he wouldn't feed us"); **id**. at 32 (where the victim stated "[h]e would always push my mom, and he would hurt her, you know? He would slap her hands and push her to the

ground."). Thus, the forensic interview was not merely cumulative evidence, and instead constituted supplemental evidence which expanded on the victim's trial testimony.

Finally, we cannot conclude that the erroneous admission of the forensic interview did not prejudice Raboin or that any prejudice was *de minimis.* The forensic interview (which consisted of forty-two pages) was not introduced until the rebuttal phase of trial. Therefore, the interview video was the last thing that the jury saw before it received instructions and debated whether the Commonwealth met its burden. Moreover, because the rebuttal took place three days after the victim's testimony, whatever effect Raboin's cross-examination of the victim had would be diminished by viewing a testimonial videotape that was not subject to rebuttal or cross-examination. *See Raboin*, 258 A.3d at 431-32 (Donohue, J., concurring and dissenting) (citing the confrontation clause and observing that "Raboin could not cross-examine the tape, and the myriad audio and visual clues that it contains were not subject to any adversarial testing"). As Raboin was unable to rebut the interview video, it may have bolstered the victim's credibility in the minds of the jurors. *See id*. at 424 (Wecht, J., concurring and dissenting). Based on these considerations, it would be impossible for this Court to determine what effect such supplementary material had on the jury's credibility assessments or conclude beyond a reasonable doubt that the interview did not influence the

jury's verdict. ***See id***. at 431 (Donohue, J., concurring and dissenting); ***see also id***. at 424 (Wecht, J. concurring and dissenting)

As this Court is not convinced beyond a reasonable doubt that the admission of nearly all of the forensic video was harmless, we are compelled to vacate Raboin's judgment of sentence and remand for a new trial.

Judgment of sentence vacated. Case remanded for new trial. Jurisdiction relinquished.

Judge Ott did not participate in the consideration or disposition of this appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2021